THE STATE v. DENNIS, *Appellant.*

80 589
112 207

1. **Indictment, Sufficiency of.** An indictment authorized by Revised Statutes 1879, section 1561, *Held*, sufficient, following *The State v. Fancher*, 71 Mo. 460.

2. **False Pretenses :** SUFFICIENCY OF EVIDENCE: VENUE. Defendant bought twenty-four mules of G., in Randolph county, for $140 each, giving G. in payment for them $80 in cash, and a draft on M. & J., of St. Louis, for the balance of $3,248, representing to G. that he had the money in the hands of M. & J. with which to pay the draft, when in fact he had in their hands but $69.60, less $32, the freight on the mules. Defendant ordered the car for the shipment of the mules, directed them to be shipped in G.'s name, and at his request they were so shipped, and after the payment of the $80 and giving the draft for the balance, defendant procured G. to sign a statement that he had bought the mules, and that they were his. Defendant went to St. Louis on the train with the mules, and on the day they arrived he sold them and ran off with the money. He exhibited to the purchaser and to the consignee the statement he had procured G. to sign, showing he had bought the mules, and that they were his. *Held,* that when defendant paid G. for the mules by giving him $80 in cash, and a draft for the balance, he became invested with the property in them, and also their possession, that he was guilty of obtaining property by means of false representations, and that the venue of the offense was properly laid in Randolph county.

*Appeal from Moberly Court of Common Pleas.*—HON. G. H. BURCKHARTT, Judge.

AFFIRMED.

*T. B. Kimbrough* and *S. C. Major* for appellant.

The court erred in overruling the demurrer and the motion in arrest, it being admitted that the possession of the mules was at no time in defendant in Randolph county. The grand jury had no right to inquire into the offense charged. Const. of Mo., art. 2, § 22; R. S. 1879, §§ 1689, 1968; *State v. Burns,* 48 Mo. 438; *State v. Meyer,* 64 Mo. 190; 15 Ind. 378; *Ex parte Slater,* 72 Mo. 102; 1 Bishop Crim. Proc., §§ 49, 50; 4 Bl. Com., 303; 1 Stark. Crim. Plead., (2 Ed.) 1. The false pretenses must be relied on

and confided in as true, and be the inducement upon which the prosecutor parted with his property. And Grant never having parted with his property in Randolph county, defendant is guilty of no offense punishable within the jurisdiction of the Moberly court of common pleas. R. S., §§ 1335, 1561; *State v. Evers*, 49 Mo. 542; *State v. Bonnell*, 46 Mo. 395; *State v. Green*, 7 Wis. 676; *State v. Mager*, 11 Ind. 154; *Comm. v. Drew*, 19 Pick. 179; *Ranney v. People*, 22 N. Y. 413; *Blanchard v. People*, 90 N. Y. 314; 1 Bishop Crim. Law, §§ 204, 206; *People v. Adams*, 3 Denio 190.

*D. H. McIntyre*, Attorney General, for the State.

The evidence offered by the State brought the defendant within the statute. R. S. 1879, § 1561; Kelley's Crim. Law, § 640; Desty's Crim. Law, § 149a; *State v. Evers*, 49 Mo. 542; *Comm. v. Alsop*, 1 Brewster (Pa.) 328; *Bowler v. State*, 41 Miss. 570. The intent may be inferred from the guilty act, and need not be directly proved. *People v. Herrick*, 13 Wend. 87; 2 Wharton Crim. Law, (8 Ed.) § 1184; 2 Bishop Crim. Law, (7 Ed.) § 471; *Comm. v. Coe*, 115 Mass. 501; *State v. Tessier*, 32 La. An. 1227; *People v. Hayes*, 11 Wend. 557. The indictment is in the form authorized by statute, and has been repeatedly sustained by this court. *State v. Fancher*, 71 Mo. 460; *State v. Connelly*, 73 Mo. 235; *State v Norton*, 76 Mo. 180.

NORTON, J.—The defendant was tried at the October adjourned term, 1883, of the Moberly court of common pleas, convicted and sentenced to imprisonment in the penitentiary for four years. The trial was had under an indictment, the formal parts of which being omitted, is as follows:

"That John B. Dennis, late of the county of Randolph aforesaid, on the 12th day of January, 1883, at Prairie township, in Randolph county and state aforesaid, within the jurisdiction of said Moberly court of common pleas, did, with intent to cheat and defraud, unlawfully and

feloniously obtain from Thomas J. Grant his property, to-wit: twenty-four head of mules, by means and by use of false and fraudulent representations, and statements, and fraud, and deception and false pretense, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state."

This indictment is based on section 1561, R. S., and under the ruling of this court in the cases of *State v. Fancher,* 71 Mo. 460, *State v. Connelly,* 73 Mo. 235 and *State v. Norton,* 76 Mo. 180 it must be held to be sufficient.

It is however insisted by counsel, first, that the evidence does not show that defendant committed any offense, and second, that if the offense charged in the indictment was committed, it was not committed in Randolph county but in the city of St. Louis, and that therefore the trial court erred in overruling defendant's demurrer to the evidence, and in submitting the case to the jury. If either one of these points is well taken the judgment must be reversed, and to determine whether they are or not, a review of the evidence is necessary.

It appears from the evidence that Thomas J. Grant, who resided in Randolph county, was the owner of twenty-four head of mules, which he had on his farm in said county; that defendant came to his house on the 12th day of January, 1883, and proposed to buy them; that they could not agree that day; that negotiations for the purchase of them were resumed the next day by the defendant when a sale was made concerning which Grant testified as follows:

" We finally agreed upon $140 per head, less the freight which was $32, making the whole amount for the mules to be $3,360, which reduced by the freight $32, and then less the amount paid in cash made it $3,248. He, Dennis, said I want you to bear in mind that my own good money is to pay for these mules. This was the fourth car load of mules I had sold Dennis. He said I need not fear that I would get my money, and that he had the money on deposit in St. Louis with which to pay the draft." This wit-

ncss further testified that "while the mules were being loaded in the cars, the defendant cried out at the top of his voice that he was nearly killed, that he had been struck on the head and he guessed it would end him ; he was carried in the depot where his head was examined and there was no sign of a blow, no knot, no blood nor cut, nor any indication that he had been struck, and though he continued to complain, and said he did not think he would ever get well, yet when we proposed to send for a doctor he said, 'oh no, I will soon be all right,' and as the train was then about due, and the mules were not paid for, I asked him for the money, and he continued his groans, ran his hands in his pockets, handed me his pocket-book, told me to take out of it as part payment on the mules, all there was in it, leaving him enough to get to St. Louis. I found in his pocket near $100, and I took out and kept $80, and gave him the balance. He said 'just leave me enough to get home.' He took the train and started for St. Louis. The twenty-four head of mules were shipped in my name to McPike & Johnson, in St. Louis, as consignee. Dennis gave me a draft on himself addressed to McPike & Johnson, in St. Louis, Missouri, which read as follows :

$3,248.                    RENICK, January 13th, 1883.

McPike & Johnson pay to the order of T. J. Grant $3,248, and charge the same to account of John B. Dennis, St. Louis.

(Signed)      J. B. DENNIS.

Witness further testified that he inclosed this draft to McPike & Johnson in a letter, which is as follows :

RENICK STATION, January 13th, 1883.

McPIKE & JOHNSON, St. Louis, Mo. :

I inclose draft on you for $3,248, which you will please honor, by sending check to me on Randolph Bank at Moberly, Missouri. The draft is for twenty-four mules I sold to John B. Dennis.

(Signed)      T. J. GRANT.

He further stated that McPike & Johnson telegraphed him that Dennis had sold the mules. Witness also testified that at the time the sale was made to Dennis, Dennis asked him to give him a statement showing what he paid for the mules, and that at his instance and dictation, he signed the following paper:

RENICK, January 12th, 1883.
McPIKE & JOHNSON:

*Gents:* I sold to-day to Mr. John B. Dennis, twenty-four head of mules for $140 per head, which makes $3,360.

(Signed) T. J. GRANT.

Dennis said his only object in getting this statement was to show it to any one to whom he would sell, that he was to give $140 per head, and for no other purpose. Witness stated that he consigned the mules as he did because Dennis requested him to do so, and to protect himself.

Mr. Powell testified as follows: " I was depot agent on the 12th and 13th of January, 1883. Dennis asked me to get a car, and said ' I think I will buy Grant's mules, but don't you tell him, for if you do Grant may raise the price on me;' that he, Powell, wrote the draft and Dennis signed it, and said that the money was with McPike & Johnson to pay the draft with, and the mules were shipped by Grant in his name to McPike & Johnson. Did not know at whose instance the consignment was made; that he drew the draft at the instance and direction of Dennis, and he directed how the mules should be consigned."

Johnson, of the firm of McPike & Johnson, testified that he saw the Dennis draft in a letter written by Grant to McPike & Johnson, on Sunday, January 14th, 1883. Saw Dennis on Sunday in the yard, and Meyer was with him; they traded after twelve o'clock. Dennis showed me and to Meyer, in my presence, the statement from Grant, to the effect, that he, Dennis, had bought the mules and paid for them, and that they were his. Meyer bought the mules and claimed to have paid Dennis for them. This witness

further stated that Dennis never had money enough deposited with McPike & Johnson to pay for the mules.

The book-keeper of McPike & Johnson testified that on the 13th of January, 1883, Dennis only had a balance to his credit of $69.60, less the freight; that he saw the draft on the 14th of January, 1883. A receipt given by Dennis to Meyer for $3,440, in full payment for the mules, was also read in evidence.

Mr. George testified that he heard Dennis tell Grant that he had the money at McPike & Johnson's to pay for the mules.

Richard Grant testified that he heard Dennis say he had the money on deposit in St. Louis to meet the draft he gave Jeff. for the mules.        —

We think the evidence above detailed brings the case within that class of crimes mentioned in section 1561, Revised Statutes. It tends to show, if it does not conclusively establish the fact, that defendant, by means of the false representation that he had on deposit with McPike & Johnson, in St. Louis upon whom the draft was drawn, money sufficient to pay it, deprived Grant of his property, and obtained it for himself. The representation made by Dennis that he had the money in the hands of McPike & Johnson to pay the draft, related to a fact having a present existence, and brings the case within the principle laid down in the case of *State v. Evers*, 49 Mo. 542, that the essence of the crime of obtaining money or property by false pretenses is, that the false pretense should be of a past event, or of a fact having a present existence.

It is, however, earnestly insisted by counsel, that if any offense was committed, the evidence shows that it was committed in the city of St. Louis, and not in Randolph county, and that the demurrer to the evidence should have been sustained, on the ground that the Moberly court of common pleas of Randolph county had no jurisdiction. If the premises assumed be well founded, the legal conclusion drawn from it is undoubtedly correct. But we are of the

opinion that the evidence shows the offense to have been committed in the county of Randolph. The indictment charges that the defendant obtained in said county the property of Grant, twenty-four mules, by means of false and fraudulent representations, etc.

The evidence shows that on the 13th day of January, 1883, defendant bought of Grant said mules at $140 per head; that the car for their shipment was ordered by defendant; that in payment for the mules he gave Grant $80 in cash, and a draft on McPike & Johnson, of St. Louis, for the balance, amounting to $3,248, representing at the time he gave the draft that he had the money in the hands of McPike & Johnson to pay it; that this representation was false, defendant only having to his credit at the time it was made with McPike & Johnson, the sum of $69.60, less freight, amounting to $32; that he directed the shipment of the mules, and they were shipped in the name of Grant at defendant's request; that defendant, after the $80 in cash was paid, and after he had given his draft for the balance of the purchase price, procured a writing to be signed by Grant, evidencing the fact that he had bought the mules, and that they were his; that defendant went to St. Louis on the same train that carried the mules, where he arrived on Sunday, the 14th of January, sold the mules, got the money for them, and ran off with it, exhibiting to the buyer and to Johnson the paper which he had procured Grant to sign, showing that he had bought the property, and that it was his. We think it clear that when defendant paid Grant for the mules by giving him $80 in cash, and his draft in payment for the balance on McPike & Johnson, that he was not only invested with the property in the mules, but also with the possession, if it be true that the mules were shipped according to his direction in the name of Grant. If the mere fact that Grant shipped the mules in his name, gave Grant the possession, then his possession was the possession of defendant, if he was only the agent of defendant. In respect to shipping them in his own name, and that he

was such. agent, is shown by the fact that defendant ordered the car for their shipment, was to pay the freight, directed the shipment, requested Grant to ship them in his own name, and the further fact that he procured Grant to give him a paper for exhibition to McPike & Johnson, (for it was directed to them,) showing a complete right, both to the property in the mules and the possession of them. Everything that was done whereby the property in the mules passed out of Grant into Dennis, was done in Randolph county, and the false representations by which this result was accomplished, were made there.

Defendant, so far as the evidence shows, made no false representation in St. Louis county to get possession of the property; he only exhibited to Meyer, who bought the mules, and to Johnson, a genuine paper which he had procured Grant to sign in Randolph county, evidencing the fact that the mules were not Grant's, though shipped in Grant's name, but were his.

The questions as to the fraudulent intent of defendant in making false representations to Grant, as well as whether Grant was influenced by them to part with his property, were submitted to the jury in unexceptionable instructions, and the evidence tended strongly to support their finding on the questions.

The fact that Grant said the mules were shipped as they were, at defendant's request, and for his own protection, could not affect the merits of the case, if the jury believed from all the evidence that the defendant made the false representation as to his having the money to pay for them for the purpose of getting Grant's mules, and that Grant, relying on such representations, let him have them.

We perceive nothing in the record that would justify an interference with the judgment, and it is hereby affirmed. All concur, except Judge HENRY, who dissents.