THE STATE v. SHAEFFER, *Appellant.*

1. **Criminal Law** : FALSE PRETENSES : VENUE OF THE OFFENCE. It is no crime to make use of false pretenses, unless by means of such pretenses the party making them obtains money or property from another to which he had no right and the crime is committed where the money or property is received.

2. —— : —— : ——. In a prosecution for obtaining money or property by means of false representations, the place where the money or property is obtained, without regard to where the representations were made, is the place in which the party should be prosecuted.

3. **Criminal Practice** : REASONABLE DOUBT. An instruction in a criminal case in explanation of the meaning of the term "reasonable doubt" is erroneous which directs the jury that, in applying the rule as to reasonable doubt they will be required to acquit if all the facts and circumstances proved can be as reasonably reconciled with the theory that the defendant is innocent as with the theory that he is guilty, they must accept the latter and render a verdict of not guilty. The rule expressed in the instruction is that which is applicable in a civil case, and not in a criminal one,

*Appeal from Jackson Criminal Court.*—HON. H. P. WHITE, Judge.

REVERSED.

*J. V. C. Karnes* and *J. W. Beebe* for appellant.

(1) The criminal court of Jackson county had no jurisdiction. The money which the defendant is convicted of obtaining was not received in Missouri. *Com. v. Van Tuyl*, 1 Met. (Ky.) 1 ; *State v. House*, 55 Ia. 466 ; *People v. Sully*, 5 Parker's Crim. Rep. 142 ; *State v. Wyckoff*, 31 N. J. L. 65 ; *In re Carr*, 28 Kan. 1 ; *People v. Rathburn*, 21 Wend. 509 ; *Rex v. Brisac*, 4 East, 164 ; *Regina v. Jones*, 1 Dennison, 551 ; (5 British Crown cases reserved) ; *Reg. v. Leach*, 7 Cox C. C. 100 :

s. c., 36 Eng. Law & Eq. 587. Following the above decisions the Traders Bank and its New York correspondent were Shaeffer's agents in presenting and collecting his draft on Blair, and the payment to and receipt by this New York correspondent of the money from Blair made the delivery the obtaining of the money complete. (2) That the Traders Bank and its correspondent, the United States National Bank of New York, were the agents of Shaeffer to collect the draft cannot be doubted. *Daily v. Bank*, 56 Mo. 94; *Gerhart v. Bank*, 38 Mo. 60; *Montgomery Co. Bk. v. Albany City*, 7 N. Y. 459; Daniel on Neg. Instruments [1 Ed.] secs. 324–349. (3) Conceding every thing claimed by the state as to the effect of the evidence, yet the defendant in every possible view of the testimony was improperly convicted under Revised Statutes, section 1561. *State v. Green*, 87 Mo. 583. (4) The court erred in refusing to declare the legal effect of the contract of February 4, 1884. (a) As the defendant was entitled to the presumption that he viewed the contract according to its true legal meaning, it follows that if his intent with regard to it was of importance, the jury should have been instructed as to its legal significance. Otherwise they would not be able to give him the benefit of this presumption. (b) It was the manifest duty of the court to construe the contract to enable the jury to determine the intent of defendant in obtaining the money, the purpose of the prosecuting witness in advancing it, and whether he was in fact "cheated and defrauded." The contract constituted an equitable mortgage, and secured Blair amply for every dollar he advanced in the enterprise, with interest. It is therein expressly stipulated that he shall be repaid "out of the sales of the land." Thus it operated as a specific lien upon the realty, for money, interest and prospective profits. The prosecutor is not only presumed to have considered the contract as a security, but the evidence shows conclusively that he

did so regard it when he made his advances. Agree-- ments of this character have uniformly been held to be equitable mortgages. 2 Story Eq. Jur., sec. 1018 and. 1020 ; *McQuie v. Peay*, 58 Mo. 56 ; *Blackburn v. Tweedie*, 60 Mo. 505 ; *Russell v. Southard*, 12 How. (U. S.) 139 ; *Henry v. Davis*, 7 Johns. Ch. 46 ; *Sweetser's Appeal*, 71 Pa. St. 264 ; *Goulding v. Brewster*, 9 Wis. 513 ; *Harbison v. Houghton*, 41 Ill. 522 ; *Honore v. Hutchings*, 8 Bush (Ky.) 687 ; *Curtis v. Buckley*, 14 Kan. 449 ; *Purdy v. Bullard*, 41 Cal. 444 ; *Case v. Mc- Cabe*, 35 Mich. 100. It is not necessary that there should be a personal liability. Jones on Mortgages, secs. 70, 72 ; 2 White & Tudor Leading Cases, section 1991. (5) By the provisions of the agreement the parties be- came *prima facie* partners *inter sese* from its date. It was the obvious intention of the partners to form a co- partnership. *Pooley v. Driver*, 5 Ch. Div. 458 ; *Parker v. Canfield*, 37 Conn. 250 ; *Richards v. Grinnell*, 63 Iowa, 44 ; *Hunt v. Erickson*, 20 Reporter (Mich.) 501 ; *Beauregard v. Case*, 91 U. S. 134 ; *Plunkett v. Dillon*, 4 Houst. 338 ; Smith's Leading Cases (8 Ed.) 1343. (6) If the parties were co-partners from the date of the contract of February 4, in the business of pur- chasing, handling and selling the lands designated, then the prosecutor in advancing his money acted as a partner, and did not part with his interest in the funds, as con- templated by the statute, nor did the defendant obtain the money within the meaning of the act. To constitute the crime of obtaining money by means of false pre- tenses, it must not only appear that the prosecutor in- tended to part with the possession, but with the title also. If the money is advanced for a specific purpose, the prosecutor retaining an interest in the same, a conver- sion thereof may amount to larceny or embezzlement, but does not constitute the crime of false pretenses, though the possession be obained by fraud. 2 Wharton's

'Criminal Law (8 Ed.) sec. 1203; *Center v. State*, 7 Lea, :349; *Reg. v. Terkes*, 12 Cox C. C. 208; *Morse v. People*, :99 N. Y. 662. (7) The seventh instruction is erroneous, :assuming as it does that defendant had made some admission or confession concerning the act charged in the indictment, whereas there is no evidence in the case upon which such an assumption could possibly be based, and had there been, the court would have erred in assuming the fact to be proved. *Fire Ins. Co. v. St. Mary's Seminary*, 52 Mo. 480; *Peck v. Richey*, 66 Mo. 11. (8) The court incorrectly declared the law as to reasonable doubt. *U. S. v. McKee*, 3 Dillon, 565; *U. S. v. Babcock*, 3 Dillon, 621; *State v. Owens*, 79 Mo. 619; *State v. Nueslein*, 25 Mo. 111; *State v. Evans*, 55 Mo. 460; *State v. Heed*, 57 Mo. 252; *State v. Leeper*, 78 Mo. 470. (9) The evidence wholly fails to establish any crime. (10) The record shows this to be a proceeding carried on in the name of the state to further the private interests of the prosecuting witness.

*B. G. Boone*, Attorney General, and *W. H. Wallace* for the state.

(1) The criminal court of Jackson had jurisdiction of the offence. The place of consummation of the illegal act is the seat of trial. The whole transaction in this case and every material part of it was consummated in Jackson county, Missouri. 1 Bishop C. L. sec. 486. It is apparent that the criminal court of Jackson county had jurisdiction, if we look at the case in the light of those authorities holding that where an offence is committed partly in one jurisdiction and partly in another, the one that first takes cognizance of the offence acquires jurisdiction. Desty's Crim. Law, sec. 55; 2 Wharton's C. L. 1206; *Rex v. Brisac*, 4 East, 164; *Regina v. Leech*, 36 Eng. L. & Eq. 589. Besides, the defendant actually received the money in Jackson county, Missouri. If the Traders Bank was Shaeffer's agent

for the collection of the money it was also Mr. Blair's agent to pay Shaeffer. But even granting everything contended for by appellant, viz: that the money was paid to Shaeffer, or his agent in New York, the authorities by no means sustain him in his position, that, therefore, the criminal court of Jackson county, Missouri, had no jurisdiction. *Norris v. State,* 25 Ohio St. 217 ; *U. S. v. Plymton,* 4 Cranch, C. C. Rep. 309 ; *Skiff v. People,* 2 Parker Crim. Rep. 147 ; *State v. Round,* 82 Mo. 679 ; *In re Carr,* 28 Kan. 1 ; *Regina v. Cook,* 1 F. & F. 64 ; *Queen v. Holmes,* 12 Q. B. Div. 23 ; s. c., 4 Am. Crim. Reps. 591. (2) The defendant was properly convicted under Revised Statutes, section 1561. *State v. Dennis,* 80 Mo. 589 ; *State v. Meyers,* 82 Mo. 558. (3) The court did not err in refusing to declare the legal effect of the contract of February 4, 1884. (4) The agreement between John I. Blair and defendant, dated February 4, 1884, is not a mortgage. 1 Jones on Mortgages, secs. 265-267. The relation of creditor did not exist between them. *Conway v. Alexander,* 7 Cranch, 218 ; *Holmes v. French,* 9 Mo. 212 ; *Slowey v. McMurray,* 27 Mo. 113 ; *Brant v. Robinson,* 16 Mo. 129 ; *O'Neil v. Capelle,* 62 Mo. 202 ; *McCauley v. Porter,* 71 N. Y. 171. (5) Under said contract the parties were not partners. *McCauley v. Cleveland,* 21 Mo. 438 ; *Whitehill v. Shields,* 43 Mo. 542 ; *Wiggins v. Graham,* 51 Mo. 17 ; *Campbell v. Dent,* 54 Mo. 332 ; *Lucas v. Cole,* 57 Mo. 143 ; *Donnell v. Harshe,* 67 Mo. 170 ; *Musser v. Brink,* 68 Mo. 242 ; s. c., 80 Mo. 350 ; *Haggoul v. Haggoul,* 1 Story, U. S. C. E. 371 ; *Bull v. Schuberth,* 2 Md. 38 ; *Holmes v. Railroad,* 5 Gray, 58. (6) There was no error in the seventh instruction given for the state. *State v. Curtis,* 70 Mo. 594 ; *State v. Hollensheit,* 61 Mo. 307 ; *State v. Carlisle,* 57 Mo. 106 ; *State v. West,* 69 Mo. 40. (7) The court did not incorrectly declare the law as to reasonable doubt. *U. S. v. Pettigrew,* 12 Meyers' Fed. Dec., secs. 59, 3127 ; *U. S. v. McKee,* 3 Cent. Law Jour. 149. (8) The court

did not err in admitting improper testimony. Besides the Supreme Court will not review errors not called to the attention of the trial court in the motion for a new trial. *State v. Jansen*, 80 Mo. 97; *Polk v. State*, 4 Mo. 544; *Pogue v. State*, 13 Mo. 444; *State v. Marshal*, 36 Mo. 400; *State v. Dunn*, 73 Mo. 586; *State v. Mc-Crary*, 74 Mo. 303; *State v. Robinson*, 79 Mo. 66; *State v. Mann*, 83 Mo. 589. (9) The evidence in the case warranted the verdict. (10) There is no foundation for the assertion that the record shows the prosecution to be intended to further the private interests of the prosecuting witness.

HENRY, C. J.—The defendant was indicted by the grand jury in the criminal court of Jackson county at the May term, 1885. The following are the charges:

The first count charges that the defendant obtained a large amount of money from John I. Blair under false pretenses, the false pretenses consisting of representations to Blair that he, the defendant, had arranged with the heirs of one Anthony to purchase of them for Blair their interest in a certain tract of land, lying in Jackson county, near Kansas City, and that Blair was to have the land at the lowest price at which it could be obtained, when in fact he purchased it at one price and represented to Blair that he had paid a large sum, and on the foregoing representation obtained from Blair more than the defendant paid to Anthony's heirs.

The second count charged that the defendant was the agent of said Blair, and as such received into his possession a large sum of money, the property of said Blair, which he feloniously converted to his own use. It is not necessary to give any other attention to these two counts, the trial court having, by instruction, withdrawn from the jury all consideration of those counts, confining their inquiry to the charge in the third count, which is as follows:

"And the grand jurors aforesaid, upon their oaths aforesaid, do further say and present that Samuel C. Shaeffer, at the county of Jackson, in the state of Missouri, on the —— day of February, 1884, did unlawfully and feloniously obtain from one John I. Blair the sum of $7,650 of lawful money, of the value of $7,650 of goods, chattels, moneys and properties of said John I. Blair, by means and by use of a cheat, and a fraud, and a false and fraudulent representation, and false pretense, and false instrument, and false statement, with intent, him, the said John I. Blair, then and there feloniously to cheat and defraud, contrary to the form of the statutes and against the peace and dignity of the state."

On this count the jury found him guilty, and assessed his punishment at imprisonment in the penitentiary for a term of eight years, and defendant has prosecuted his appeal.

The evidence for the state tended to prove that the defendant made representations to Blair to the effect that he had agreed to pay to the Anthony heirs for their interest in a tract of land near Kansas City $8,450, having in fact purchased the same at the price of eight hundred dollars. The agreement between Blair and defendant, in relation to the interest of the Anthony heirs in the tract, was that Blair would place the money to make that purchase to defendant's credit in such bank at Kansas City as defendant might suggest by telegraph, or that he would pay defendant's draft at sight, National Park Bank, New York. It appears that defendant telegraphed Blair, February 12, 1884, that he had drawn on him for $19,668.33, which sum included the $8,450 for the interest of the Anthony heirs. The draft was as follows :

"$19,668.33.        KANSAS CITY, Mo., Feb. 12, 1884.

"At sight, pay to the order of myself, nineteen thousand, six hundred and sixty-eight and thirty-three hundreths dollars with exchange, value received, and charge to account of

"JOHN I. BLAIR,

"To Park National Bank, New York City.

"S. C. SHAEFER."

This was indorsed by Shaeffer to the Traders Bank of Kansas City, which sent it for collection to the United States National Bank, New York, which collected it and placed it to the credit of the Traders Bank, of Kansas City, which, after being informed of the payment of the draft in New York, paid the amount to Shaeffer at Kansas City.

On this state of facts the question arises where was the offence with which the defendant is charged committed ? It is no crime to make use of false pretenses, unless by means of such pretenses the party making them obtains money or property from another to which he had no right. And the crime is consummated where the money or property is received. *Commonwealth v. Van Tuyl*, 1 Met. (Ky.) 1; *State v. House*, 55 Ia. 466; *Stewart v. Jessup*, 51 Ind. 413. In the latter case the substantial fact was that one Kerr, relying upon false representations of Stewart, sold the latter twelve horses which Kerr had shipped to New York, where Stewart got possession of them. Stewart was arrested in Indiana on the charge of obtaining the horses by false pretenses, and on a preliminary examination before a justice of the peace, was adjudged guilty and required to give security in the sum of $3,000 for his appearance in the circuit court to answer the charge. Stewart, not having given the security, was committed to jail, and upon a writ of *habeas corpus* was brought before the circuit court of Hamilton county, and on appeal to the Supreme Court

of the state from a judgment of the circuit court against him, the Supreme Court reversed the judgment, holding that the crime was not committed in Indiana where the false representations were made, but in the state of New York, where the property was received. Numerous decisions of that court to the same effect were cited in the opinion. *Norris v. State*, 25 Ohio St. 217, is also a case analogous to the case at bar. The defendant was a resident of Clark county, and by fraudulent representations as to his solvency, contained in a letter, he induced the Akron Sewer Pipe company, located in Summit county, to ship him by rail to Clark county, a lot of sewer pipe. He was indicted in Clark county, but the Supreme Court held that the crime was committed in Summit, and remarked that, " The weight of authority is clearly that the railroad company was the agent of defendant for receiving the goods at Akron and carrying them to Springfield, and the delivery to it by the Sewer Pipe company was in legal contemplation a delivery of the goods to the defendant at Akron."

So, in the *People v. Sully*, 5 Parker's Crim. Rep. 142, defendant was indicted in Buffalo, Erie county, he having obtained by false pretenses in Buffalo, a check drawn on a bank in Batavia, Genesee county. The indictment was for obtaining the signature to the check, and it was held that he was properly indicted in the county, but the court said : " It is not material where the pretenses were made. The obtaining the signature or property by means of them, with intent to cheat and defraud, completes the crime and determines the place of trial." And further remarked the court : " The prisoner could not have been convicted under the first count for obtaining the money through or by means of the check, for the money was obtained at Batavia without the territorial jurisdiction of the court."

So, in *State v. Wyckoff*, 31 N. J. L. 68, the general proposition is asserted that, " A crime is to be tried in

the place in which the criminal act has been committed. It is not sufficient that part of such act shall have been done in such place, but it is the completed act alone which gives jurisdiction.''

In the *State v. Dennis*, 80 Mo. 594, the defendant was indicted for obtaining, by false pretenses, a lot of mules, and the question was, whether he had received the mules in Randolph county or in the city of St. Louis. In delivering the opinion of the court, Judge Norton said: ''It is, however, earnestly insisted by counsel that if any offence was committed the evidence shows that it was committed in the city of St. Louis and not in Randolph county ; and that the demurrer to the evidence should have been sustained on the ground that the Moberly court of common pleas of Randolph county had no jurisdiction. If the premises assumed be well founded the legal conclusion drawn from it is undoubtedly correct.'' The judgment was affirmed, the majority of the court holding that the mules were received by defendant in Randolph county. I dissented, believing that the evidence established the reception of the mules in the city of St. Louis.

We entertain no doubt that the place where the money or goods, are obtained, without regard to where the representations were made, is the place where the party should be prosecuted.

Where did Blair pay this money ? Where did he lose his property in the money and his dominion over it ? If he deposited it in the Park National Bank to the credit of Shaeffer that was a payment in New York to Shaeffer. If he had money on deposit to his own credit and directed the bank to pay it on Shaeffer's check or draft, then, when so paid in New York, whether on Shaeffer's check or draft, he then parted with his money. The United States National Bank was the agent of the Traders Bank, of Kansas City, which was unquestionably the agent of Shaeffer. Neither of the banks was in any

sense the agent of Blair, but whether the United States National Bank is to be considered as the agent of Shaeffer or the agent of the Traders Bank is wholly immaterial, since it is clear that it was not the agent of Blair or of the National Park Bank. After the National Park Bank paid the money to the United States National Bank, Blair's obligation to pay the money was discharged, and if that bank had become insolvent or failed to account for the proceeds of the check to the Traders Bank, Shaeffer could have had no recourse upon Blair. The Traders Bank received the draft for collection for Shaeffer's accommodation, and paid him the amount of the draft only on the assurance from its correspondent in New York that the Park Bank had paid the draft. That the Traders Bank then paid the amount of the draft to Shaeffer was not a payment by Blair. But the substance of this transaction was the collection of the money in New York from Blair and a disposition in Kansas City by Shaeffer of that money so collected in New York. If, instead of receiving the money, Shaeffer had received property in Kansas City from the Traders Bank instead of the money, the principle applicable would have been the same. The Traders Bank paid Shaeffer its money, not Blair's. The United States National Bank held the money sent, not as Blair's money, but really as Shaeffer's, though nominally as the money of the Traders Bank, and the endorsement of the draft to the Traders Bank by Shaeffer operated to transfer the proceeds of the draft to the Traders Bank, when paid by the Park National Bank to the United States National Bank. A merchant in New York who draws a draft on a customer in St. Louis which is paid by the latter to a bank in St. Louis to which the draft is sent for collection does not thereby pay the money in New York, but in St. Louis, and that the New York merchant indorses it for collection to a bank in New York and receives the money on New York from that bank, after the latter has notice

of the payment of the draft in St. Louis to its corres-pondents there, does not make the payment by his customer to the bank in St. Louis a payment of the money to the New York merchant in New York. There are other important questions in this case which it is not thought necessary to determine, inasmuch as holding that the crime was not committed in Jackson county, and that the criminal court of that county had no jurisdiction of the cause, the judgment must be reversed and the accused discharged.

There is, however, one instruction given by the court for the state upon which it is thought best to express our views. It is as follows :

"6. In law a party accused of crime is presumed to be innocent until the contrary is proven beyond a reasonable doubt. If, therefore, upon a consideration of all the evidence in this cause you entertain a reasonable doubt as to the guilt of defendant you will give him the benefit of such a doubt and find him not guilty. In applying the rule as to reasonable doubt you will be required to acquit if all the facts and circumstances proven can be reasonably reconciled with any theory other than that the defendant is guilty ; or to express the same idea in another form, if all the facts and circumstances proven before you can be as reasonably reconciled with the theory that the defendant is innocent as with the theory that he is guilty, you must adopt the theory most favorable to the defendant, and return a verdict finding him not guilty. You will observe, however, that the doubt to authorize an acquittal on that ground alone must, as stated, be reasonable, and it must be also one fairly deducible from the evidence considered as a whole."

The mere possibility that the defendant may be innocent will not authorize an acquittal. It declares very properly "that one accused of crime is presumed to be innocent until the contrary is proven beyond a rea-

sonable doubt. If, therefore, upon a consideration of all the evidence in this case you entertain a reasonable doubt of the guilt of the defendant, you will give him the benefit of such doubt and find him not guilty," but then proceeds to explain what is meant by a reasonable doubt, as follows : "In applying the rule as to reasonable doubt you will be required to acquit if all the facts and circumstances proven can be as reasonably reconciled with the theory that the defendant is innocent as with the theory that he is guilty ; you must accept the theory most favorable to the defendant and render a verdict finding him not guilty." This attempted explanation of the term "reasonable doubt" would eliminate it from the criminal code, and leave juries to find verdicts in criminal cases upon the mere preponderance of the evidence. By that explanation the benefit of a reasonable doubt in criminal cases is no more than the advantage a defendant has in a civil case. The doctrine expressed in this explanation is exactly that which is applicable in a civil action, in which, if the facts proven can be reasonably reconciled with the theory that the defendant owes what he is sued for as that he does not, the defendant is entitled to a verdict. The plaintiff must make out his case and if the evidence is evenly balanced he cannot recover. But for the explanation of what was meant by reasonable doubt the instruction correctly declares the law, and why that should have been injected into the instruction is inconceivable.

The instruction in regard to reasonable doubt, approved in *State v. Nueslein*, 25 Mo. 111, has been repeatedly sanctioned by this court. Juries understand it, the bench and bar are familiar with it, and it is not safe to depart from it in efforts to make clearer what is well understood. This case illustrates the danger of such experiments. Here the new matter introduced into the instruction vitiated it, and if for nothing else,

the judgment would have been reversed for that error. As long as this court adheres to what it has ruled, especially in criminal cases, it is the better and safer practice for trial courts to be guided by its rulings.

The judgment is reversed and the prisoner discharged. All concur.

NORTON, J., CONCURRING.—I place my concurrence in reversing the judgment in this case, not only on the ground so clearly stated in the opinion of the court, but on the further ground that the misrepresentations made by the defendant, if made as disclosed in the evidence, and for which it is sought to make him criminally liable, having been made in the progress of a long real—not bogus—business transaction, are not mentioned in the class of offences against which section 1561, Revised Statutes, is directed. In what is here said Judge Ray concurs with me.