## In re ALDRIDGE.

(District Court, N. D. New York. February 26, 1909.)

1. BANKRUPTCY (§ 407*)—DISCHARGE—GROUNDS FOR REFUSAL—DEBTS CREATED BY FALSE STATEMENTS.

To debar a bankrupt from a discharge under Bankr. Act July 1, 1898, c. 541, § 14b (3), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1907, p. 1026), on the ground that he "obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit," it is not necessary that the property should have been obtained for himself or for his benefit, but if it was obtained on his credit as principal or surety, and such credit was induced by his materially false statement in writing made for the purpose, the case is within the statute.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*]

2. BANKRUPTCY (§ 407*)—DISCHARGE—GROUNDS FOR REFUSAL—DEBTS CREATED BY FALSE STATEMENTS.

A statement in writing by means of which a bankrupt obtained property on credit, in order to be within Bankr. Act July 1, 1898, c. 541, § 14b (3), 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended by Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 (U. S. Comp. St. Supp. 1907, p. 1026), which debars him from a discharge if he obtained property on credit by means of a materially false statement "made * * * for the purpose of obtaining such property on credit," need not necessarily have been written nor signed by the bankrupt himself, nor by one who knew it to be false, but if the bankrupt obtained such statement from another with the design of so using it, and knowing it to be materially false, used it for the purpose and with the effect of obtaining the property on credit, he is within the statute, although the statement may have been made and signed in good faith by one who believed it to be true.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 407.*]

In Bankruptcy. Application by objecting creditors for an order overruling the exceptions filed by the bankrupt to the report and findings of Wm. P. Badger, Esq., referee in bankruptcy, and which recommends that a discharge be denied, and denying a discharge to the above-named bankrupt, Millard F. Aldridge.

Seth S. Allen, for objecting creditors.

S. L. Wheeler, for bankrupt.

RAY, District Judge. The specifications of objection to a discharge of the bankrupt must be regarded as sufficient. They were neither demurred to as insufficient, nor was any motion made for an order requiring them to be made more definite and certain. Rule 12 of this court requires that the specifications of objection, if deemed insufficient or uncertain, shall be questioned and their sufficiency determined by motion or demurrer, "in default whereof such specifications shall be deemed sufficient to present the questions suggested thereby." This

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

rule became necessary to prevent the practice of going to trial on the hearing after the case was referred, and then, when the report came before the court, if adverse to the bankrupt, raising the question of the sufficiency of the specifications of objection. The rule is adhered to; but the specifications were sufficient to give notice of the points presented and relied on by the objecting creditors. The issues were clearly presented before the referee.

The important question is, was the evidence before the referee sufficient to justify the finding and holding that the bankrupt, Millard F. Aldridge, had offended against subdivision 3, § 14b, of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 550 (U. S. Comp. St. 1901, p. 3427), as amended February 5, 1903 (Act Feb. 5, 1903, c. 487, § 4, 32 Stat. 797 [U. S. Comp. St. Supp. 1907, p. 1026]), and which provides that a discharge shall be denied if the bankrupt has "obtained property on credit from any person upon a materially false statement in writing made to such person for the purpose of obtaining such property on credit"?

This ground for refusing a discharge was introduced into the law by the amendatory act of 1903. What does it mean? Must the written statement be actually made by or signed by the bankrupt in person, or some one authorized to sign his name? Or is it sufficient if the bankrupt induces or procures some other person to make the materially false statement in writing, such other person signing his own name thereto, the bankrupt obtaining and procuring the statement with the design of using it "for the purpose of obtaining such property on credit," and then so actually and successfully using it? Also, is it essential that the person who wrote and signed the statement with his own name at the instigation or request of the bankrupt should have known it was false? Also, if the statement expresses the opinion or state of mind of the writer and signer as to the financial standing and ability of the person so obtaining and using it, and that opinion and state of mind were induced by the acts and words of the person procuring and intending to use the statement, and that person also knows that the opinion expressed in the statement is entirely unfounded and incorrect and the state of mind an entirely mistaken one, but such person having obtained the statement, nevertheless uses it successfully to obtain property of a third person on credit, and thereby misleads and deceives the seller into giving credit, is this obtaining property on credit from a person on a materially false statement in writing made to such person for the purpose of obtaining such property on credit? Again, must the statement be used by the one in whose favor it is written to obtain the property for himself?

In September, 1906, the bankrupt, Millard F. Aldridge, and his brother, Herbert W. Aldridge, were, and for some time had been, more or less connected in business or business transactions. Both were insolvent. Herbert W. Aldridge was substantially worthless and had no credit. Millard F. Aldridge was actually insolvent, and he knew it. He had owned, and then, by most people, was supposed to own, considerable quite valuable real estate and property, but he had disposed of it, quite largely to his wife, and he was doing business for her as her agent. This was not generally known. It is evident

from the evidence and circumstances and conduct of these men that shortly prior to September 26, 1906, these brothers conceived the idea of purchasing a large amount of property on credit, and, probably, without intending to pay for it. Herbert W. Aldridge was to purchase the property, and Millard F. Aldridge was to indorse his notes. On or about September 26, 1906, Millard F. Aldridge, the bankrupt, having in mind the purchase of property by his said brother on credit, and expecting he himself would be the indorser on his paper, went to John M. Wever, the vice president of the Merchants' National Bank of Plattsburgh, N. Y., and requested Wever to write him a recommend. He did not disclose to Wever that he had parted with his property. Pursuant to such request Wever wrote, signed, and delivered or sent to Aldridge a letter of which the following is a copy:

"The Merchants' National Bank, Plattsburgh, N. Y., Sept. 26, '06.
"To Whom It May Concern.

"Dear Sir: We take pleasure in stating that we have done business with Mr. M. F. Aldridge of Chazy, N. Y., for about 20 years and have always found him to be a very satisfactory customer in every particular. We believe him to be good for any contract he will make and have no doubt he is worth $10,000 and upwards.

"Yours Resp.                                   John M. Wever, V. P."

He obtained such letter or recommend for the purpose and with the intention of having its contents communicated to persons with whom he and his brother should deal, and for the purpose of using it to procure credit for his brother in purchasing goods, and credit for himself as indorser for his brother on paper to be given in payment for such goods; in short, to enable his brother and himself to obtain goods or property on credit. He knew that Wever did not understand his actual financial condition or situation. He knew that he was not worth $10,000 or any sum. He knew that Wever wrote under a misapprehension of the facts, and that the letter would give to any one who read it the idea and impression that he, Millard F. Aldridge, was worth $10,000, and he intended that it should. He knew that, on its face, such letter represented, and in effect stated, that he was worth that sum, and he knew that, considered and construed as a statement of his financial condition, it was a misleading and false statement and representation. On receiving the letter, Millard F. Aldridge delivered it to his brother, Herbert W. Aldridge, for him to use in obtaining property and credit therefor, with Millard F. Aldridge as indorser on his notes to be given in payment. Herbert W. Aldridge knew the financial condition of his brother and the falsity of the representation contained in the letter.

On the 17th day of October, 1906, said Herbert W. Aldridge wrote to Hickstein Piano Company of Auburn, N. Y., a letter of which the following is a copy:

"Chazy, Clinton Co., N. Y., Oct. 17, 1906.
"Hickstein Piano Co., Auburn, N. Y.

"Gents: Yours of Oct. 11th received and noted. I am favorably impressed with description and cuts of your pianos and if we can come together on terms &c. we can do some business.

"I shall want to buy on four mos. time and will furnish bank reference. I have been doing business here for a number of years in a small way and now

have Mr. M. F. Aldridge associated with me financially, whose credit and financial ability is A1 and times are good here and as I have an extended territory I feel that I am justified in extending my business.

"Mr. M. F. Aldridge will endorse my notes at 4 mos.

"Let me hear from you at an early date that I may know what to do in the matter.

"Yours truly,                                        H. W. Aldridge.

"P. S. The Wegemen piano is sold in this territory by Malone & Burlington Agts. and I would like to have an instrument that I can say is made in the same city and your Union label would be a strong taking point.    H. W. A."

Shortly thereafter he forwarded the Wever letter to said company, intending it as a representation to said company of the financial condition and responsibility of his brother. A few days thereafter an agent of said company, one John H. Anderson, went to Chazy, N. Y., where the Aldridges resided, and had interviews with both in regard to selling pianos to Herbert W. Aldridge. Anderson had the Wever letter with him and showed it to Millard F. Aldridge, the brother being present, who read it to Anderson. On the strength of the representations contained in said Wever letter and relying thereon, and at the request of said brothers Aldridge, said Anderson, as agent of and representing said Hickstein Piano Company, then and there sold to said Herbert W. Aldridge 12 pianos on credit, agreeing to take the notes of Herbert W. Aldridge in payment therefor, on the agreement and understanding that said Millard F. Aldridge would indorse same. The pianos were delivered, and the notes, indorsed by said Millard F. Aldridge, were given and accepted in payment. Said Anderson, in making such sale and extending such credit, believed the statements contained in said Wever letter, and that Millard F. Aldridge was worth $10,000, and relied thereon, and would not have made such sale, or extended such credit, or delivered such property, but for the statements contained in such Wever letter. The notes were not paid; Herbert W. Aldridge was and is worthless, and Millard F. Aldridge was then insolvent, and is now bankrupt seeking a discharge.

The referee has found and reported the facts, and finds that in said transaction said Millard F. Aldridge, the bankrupt, "obtained property on credit from said Hickstein Piano Company upon a materially false statement in writing made to said Hickstein Piano Company for the purpose of obtaining such property on credit." The elements of actual and intentional fraud and deceit were both present. The statement presented and used, and which was the inducing cause that procured the Hickstein Piano Company to sell and part with its property to Herbert W. Aldridge on the credit of Millard F. Aldridge —that is, on credit—was in writing. Millard F. Aldridge took an active part in securing the sale and delivery of the property and extension of credit. He took an active part in obtaining the property on credit, not for himself, however, but for his brother. He obtained the property for his brother, but on his own credit, on a statement in writing, which statement induced the parting with the property and the extension of the credit therefor, made for the purpose of obtaining such property on credit. I think it immaterial that the property was obtained by Millard F. Aldridge for the brother as the vendee. I think it immaterial that the written statement was written and signed

by the vice president of the bank, Wever. In re Goodhile (D. C.) 130 Fed. 782. The statement was made to "whom it may concern," and it was shown and actually delivered to the piano company by these brothers Aldridge for the purpose of obtaining the property on credit. Was this written statement a "materially false statement"? It was material. Was it false? Millard F. Aldridge knew that it conveyed to any one who should read it the impression, and gave such person the understanding, that he, Aldridge, was worth the sum of $10,000, and he intended that it should. By presenting it to the piano company, he made it his own statement. He, in effect, said, "Here is the opinion and estimate of a banker who knows me as to the value of my property and my pecuniary responsibility, and it is true and correct. I present it for your consideration in extending credit to my brother for pianos on the strength of my indorsement. It tells you my financial condition and responsibility." He knew he had no property, but took no measure to undeceive Anderson or inform him of the truth.

A false statement in writing, like a false pretense, "may be made either expressly or by implication." And "so the form of words in which the pretense is couched is immaterial; if they are intended to create and do create the impression that defendant is making a representation as to a present or past fact, the pretense is within the statute." 19 Cyc. 401; Lesser v. People, 73 N. Y. 78, 81; Maley v. State, 31 Ind. 192; State v. Fooks, 65 Iowa, 196, 452, 21 N. W. 561, 773; Commonwealth v. Hulbert, 12 Metc. (Mass.) 446; State v. Dennis, 80 Mo. 589.

The Wever statement is more than a mere expression of opinion. It is a statement that "we, the bank, have done business with him for 20 years, and have always found him a satisfactory customer"; that is, honest, prompt, and responsible. They believe him to be good; that is, responsible, as the owner of property, for any contract he will make, and "have no doubt he is worth $10,000 and upwards." This is a direct statement that they have knowledge of his business methods and financial condition and estimate the value of his property at $10,-000. This is what the statement means. This is the idea plainly conveyed. When Millard F. Aldridge delivered this written statement to his brother to deliver to the piano company, and later read it to its agent without qualifying it, except to say he did not think he was worth $10,000, he adopted and ratified it as his own statement in writing, and upon it obtained the property. Presented and read by Aldridge, it was a material and a totally false statement.

It is, of course, possible to construe subdivision 3 of section 14b of the bankruptcy act, as amended, to mean that the property must have been obtained by the bankrupt for his own use or benefit, to swell or benefit his own estate; and that the written statement used to obtain such property must have been one made by the bankrupt himself or under his direction, so that the written statement itself was in fact his composition, and his expression made to the person of whom the property is obtained and for the purpose of obtaining it. But the section does not so read, and would not, in my judgment, serve the purpose for which intended should we give it such a narrow

and strict construction. The words "from any person" and "made to such person" cannot have been intended to mean that obtaining the property from an agent of the owner by means of a "materially false statement in writing" is not within the act. The words "obtained property," and "obtaining such property on credit," do not mean that the property must have been obtained for the use or benefit of the one obtaining it. I think that if a bankrupt has obtained property from another person for a third person, on his own credit (that of the bankrupt), upon a materially false statement in writing made to that "other person" for that purpose, he is to be denied a discharge. If A., now a bankrupt seeking a discharge, as indorser on a note given by B., as maker, in payment for property obtained from C. for B. by A., is owing C., and C. was induced by A. to part with such property to B. and accept such note relying on A.'s indorsement, and A. at the time of obtaining such property made a materially false statement in writing to C., or the agent who did the business for C., and the property was parted with and the note accepted in reliance on such statement and in the belief that it was true, A. is not entitled to his discharge. The statute quoted was intended to cover such a case, and in my judgment does cover it.

The next question is, how must the false statement have been made, and by whom must it have been made? It must have been made or communicated to the person who parted with the property or his acting agent. The act does not say that the "materially false statement in writing" must have been composed, or written, or signed by the person obtaining the property, or that it must have related to his financial condition. If the materially false statement was innocently composed and written and signed by another, or third person, in the full belief it was in all respects true, at the request of one who, knowing the statement to be in fact false, intended to present and use it to obtain property on credit, and who did present and use it by presenting it to a merchant for the purpose of obtaining property on credit, and such merchant relied on such statement, and, in the belief that it was true, parted with his property on credit, then that person who requested and procured the statement and who used it for the purpose mentioned has, in my judgment, "obtained property on credit from" a "person upon a materially false statement in writing made" by him "to such person for the purpose of obtaining such property on credit." He has used it, communicated it, and in so doing made it his own. The word "made" is not to be so narrowly and strictly construed as to signify that the one who obtains the property must himself have composed, written, and signed the false statement. Such a transaction as I have described is one the Congress intended to reach and cover by the language used. "Made" signifies action; but when a person has "communicated" to another a written statement by reading it to him and delivering it to him, that statement has been "made to" such other person, within the meaning of the law. The words "made to" do not necessarily imply that the one communicating and using the statement also composed it or made it up. "Make known" is a synonym of "communicate." Soule's Dictionary of English Synonyms, 84. The verb "make" has many significations and conveys many

meanings, among which is "to put forth; give out; deliver;" also, "to inform; apprise." Century Dictionary. I think that when a person, seeking credit, hands to a merchant a materially false written statement concerning his financial condition, no matter who composed and signed it, if it be one calculated to deceive, and then reads it to such merchant, and thereby obtains property from him on credit, he has obtained property on credit upon a materially false statement in writing "made to" such person. I do not think such a person can escape the consequences of his act by showing that the materially false statement was written and signed by another person in the full belief that it was true. If it was false in fact, and its falsity was known to the one who obtained the property by its use, that is all-sufficient, and the case is covered by the section referred to.

The bankruptcy law of 1898 shows on its face two leading and controlling purposes, viz.: (1) The surrender by the insolvent debtor of all his property, not exempt, for the benefit of all his creditors; and (2) the discharge of such debtor who has obeyed the orders of the court and complied with the law, and has not been guilty of any of the acts specified in the law as a bar to his discharge. The law gives notice that certain acts done prior to the institution of bankruptcy proceedings will bar a discharge. The law thus encourages honest dealing, and says to all debtors, within its provisions, "If you deal honestly and business misfortune overtakes you, on surrendering all your property for the benefit of all your creditors, with no preferences so far as you are concerned, and you then act honestly and obey the orders of the court, you will be discharged from all your debts and enabled to start business life anew in the open, and unincumbered and unembarrassed by your former debts and business misfortunes."

This law is extremely lenient in putting up bars to a discharge. No honest man can reasonably allege that the law is unwise, or unjust, or strict, in naming grounds for refusing a discharge. The provisions in this regard are in no sense penal. They are not intended as a punishment, but as an incentive and encouragement to honest dealing, and a protection, in a degree, to those who extend credit. The provisions in the law specifying the grounds on which a discharge is to be refused are, therefore, to have a reasonable construction, a construction that will carry out and make effective the intent of the legislative body enacting them, and promote the objects for which they were intended. We are not to adopt either a loose or an unduly strict construction, or one we would give to a private contract, but a reasonable one, having in mind the grounds sought to be covered, and the evils, if any, sought to be remedied, and the objects sought to be attained. Legal Tender Cases (opinion by Mr. Justice Gray) 110 U. S. 421, 439, 4 Sup. Ct. 122, 28 L. Ed. 204, et seq.; Gibbons v. Ogden, 9 Wheat. 1, 6 L. Ed. 23; 8 Cyc. 729, 730, and cases there cited. Can any one doubt that subdivision 3 of section 14b of the bankruptcy act was intended to cover such a case as the one now under consideration? The language of the amendment, giving it its ordinary sense without interpolation, covers the case. Aldridge obtained the property on credit from the piano company, a person in the eye of the law, upon a materially false statement in writing made to such company for the

purpose of obtaining such property on credit. The case is within the letter and the spirit of the law. We may, perhaps, obtain a fair idea of the moderation of Congress when we read such cases as Tindle v. Birkett, 171 N. Y. 520, 64 N. E. 210, 89 Am. St. Rep. 822, Eaton C. & B. Co. v. Avery, 83 N. Y. 31, 38 Am. Rep. 389, Morgan v. Skiddy, 62 N. Y. 319, and People ex rel. Phelps v. Court of Oyer and Terminer, 83 N. Y. 436, as well as of the evils sought to be reached.

The report of the referee is confirmed, and there will be an order refusing a discharge.