HARROD CONSTRUCTION CORPORATION, Plaintiff, *v.* PAUL ENGLANDER, Defendant.

Supreme Court, New York County, June 18, 1934.

*Alex. B. Greenberg*, for the plaintiff.

*Murray L. Halpern*, for the defendant.

ROSENMAN, J. In determining this motion to dismiss the complaint the evidence presented on behalf of the plaintiff must be considered to be true. The plaintiff was about to sign a contract to do some construction work for Milton Engineering Corporation. It insisted upon having a guaranty that it would receive the payments to be made under the proposed contract; and was referred for that purpose to the defendant. No pecuniary connection of any kind has been established between the defendant and Milton Engineering Corporation. The defendant made certain glowing representations to the plaintiff as to his financial standing, which were grossly false. The plaintiff, relying on them, accepted the guaranty of the defendant, signed the proposed contract and proceeded to do the work.

The plaintiff was not paid in full for his work; and sued the defendant on the guaranty. Judgment was recovered. The defendant filed a petition in bankruptcy, listed the judgment as one of his liabilities and received his discharge.

This action was thereupon instituted for damages for fraud, consisting of the false representations made by the defendant which induced the plaintiff to accept his guaranty and enter into the construction job, resulting in substantial loss.

The discharge in bankruptcy is set up as a defense. The plaintiff urges the invalidity of the defense under the provisions of section 17 of the Federal Bankruptcy Statute (30 U. S. Stat. at Large, 550, as amd.; U. S. Code, tit. 11, § 35). Section 17 provides in part as follows: " A discharge in bankruptcy shall release a bankrupt from all his provable debts, except such as * * * (second) are liabilities for obtaining property by false pretenses or false representations, or for willful and malicious injuries to the person or property of another."

The defendant obtained no property for himself as a result of his fraud. The Milton Engineering Corporation received a contract signed by the plaintiff and a performance of that contract. Under these circumstances, was the liability of the defendant released by his discharge in bankruptcy? In other words, is the bankrupt protected because although he " obtained property by false pretenses," he did not obtain the property for himself but for another?

The cases are in conflict. Our own Appellate Division in this department has held that in order to exempt a claim for obtaining property by fraud it must appear that such property was obtained by the bankrupt himself (*Gerdau Co.* v. *Radway*, 222 App. Div. 107). It was there held insufficient that another received the benefit resulting from the bankrupt's fraud.

This authority seems controlling. The plaintiff cites other precedents which he contends call for a contrary conclusion. The cases relied upon by it do not sustain the contention urged.

In *Matter of Dunfee* (219 N. Y. 188) the bankrupt, by fraudulent representations, had secured a surety bond for himself, guaranteeing his obligation to a third party. Subsequently the surety company was obliged to pay the debt of the bankrupt. The payment was obviously for the benefit of the bankrupt. The court held that the parties at the time the fraud was perpetrated intended that the surety should become obligated for the bankrupt's benefit and must have had in contemplation the results which would naturally follow from such a contract. " So when the surety company paid the loss to the obligee in fulfillment of its obligation the law implied that the payment was at the request of Dunfee [the bankrupt] and this implication arose from the contract of suretyship itself " (p. 190).

The defendant here, however, did not receive a guaranty of his own debt. On the contrary, he was the one who executed the

guaranty. Nothing was received by the bankrupt at or after the time of the commission of the fraud. Nothing was paid for his benefit or on his behalf, either when the representations were made or when their falsity resulted in damage to the plaintiff.

The Federal authorities are in disagreement as to the proper rule to apply. Many of them arise not under this section of the act but under section 14, paragraph b, clause 3 (U. S. Code, tit. 11, § 32, ¶ b, cl. 3), which deals with the grounds on which discharge may be denied. The material portion of that section reads as follows in the present form: " The judge shall   *   *   *   discharge the applicant unless he has   *   *   *   (3) obtained money or property on credit, or obtained an extension or renewal of credit, by making or publishing, or causing to be made or published, in any manner whatsoever, a materially false statement in writing respecting his financial condition." (As amd. by act of May 27, 1926.)

From the language of this section as compared with the portion of section 17 quoted above, as well as from considerations of the policy of the act, the meaning of the words " obtaining property " should be the same in each case. Precedents construing the phrase in either section are relevant to the construction of the other.

Under these sections the Federal courts seem to be in conflict. Some require that the property be obtained actually by the bankrupt, or, at least, that he derive some definite direct pecuniary benefit as a result of his fraud, before these provisions become applicable. (*Matter of Applebaum* [C. C. A. 2d Cir. 1926] 11 F. [2d] 685.)

Others have held that whether the bankrupt himself receives the property or other benefit or whether the benefit and property is conferred upon another, the commission of the fraud which brought about the transaction is sufficient to block a discharge, or to remove from the cause of action arising from the fraud the mantle of the protection of the discharge. (*Matter of Scheffler* [D. C. W. D. of N. Y. 1932] 1 Fed. Supp. 582; rearg., 2 id. 221; *Matter of Aldridge* [D. C. N. D. of N. Y. 1909] 168 Fed. 93; *Levy* v. *Industrial Finance Corp.* [C. C. A. 4th Cir. 1927] 16 F. [2d] 769; *Matter of Adams* [D. C. N. D. of Texas 1930] 44 id. 670; *Royal Indemnity Co.* v. *Cooper* [C. C. A. 4th Cir. 1928] 26 id. 585.)

It was because of the above conflict in the holdings of the fourth and second circuits that the Supreme Court of the United States reviewed by writ of certiorari the case of *Levy* v. *Industrial Finance Corp.* (*supra;* affd., 276 U. S. 281 [1928]). The Supreme Court upheld the Circuit Court of Appeals and denied a discharge to a bankrupt who had obtained credit for another corporation by a false statement. The bankrupt, however, was the president and

general manager of the corporation, had made large advances to it, and owned with his sister-in-law more than two-thirds of its stock. The court expressly based its finding on this direct pecuniary interest, and stated that it was merely a " simple device of interposing an artificial personality between the bankrupt and the lender." The court limited its ruling specifically to such a situation: " We go no farther than the facts before us, and without intimating that our decision would be different, we express no opinion as to how it would be if the bankrupt had no substantial pecuniary interest in the borrowers obtaining the loan " (p. 283).

The Supreme Court thus in effect overruled the *Applebaum* case in this circuit, but strictly limited the general language of the Circuit Court in the *Levy* case which was broad enough to have covered a case where the bankrupt did not have a pecuniary interest in the corporation which received the property. The language of the section construed by the Supreme Court in the *Levy* case was prior to the amendment of May 27, 1926 (44 Stat. 663); but for purposes of this opinion the change was immaterial. Indeed, the court states (at p. 283 of its opinion) that the amendment of 1926 " serves to limit the bars to a discharge more narrowly and by indirection to favor the defendant's position."

In the present case there is no evidence of any financial interest in the Milton Engineering Corporation on the part of the bankrupt or of any possible benefit accruing to the bankrupt himself as a result of his fraud. Under these circumstances the reasoning of the Supreme Court is by its very opinion not applicable. The rule laid down by the Appellate Division in this department, therefore, is still applicable.

I have considered and rejected the contention made by the plaintiff that the acts of the defendant here proven constitute " willful and malicious injuries to the person or property of another," under section 17. Neither the precedents cited by the plaintiff nor the policy of the act nor sound legal reasoning warrants such conclusion.

Motion to dismiss the complaint is granted with exception to plaintiff. Thirty days' stay and sixty days to make a case.