CHIEF JUSTICE DUVALL
delivered the opinion of the court; -
On the 12th of December, 1853, A. H. Jameson éxecuted a mortgage’to Walter Gregory, to secure the payment of thirty-three notes of that date, thirty-two of which were for $200 each, and the remaining one for $100, amounting in the aggregate to $6,500.
On the 2d of April, 1855, Jameson executed a mortgage to Gregory and Maury to secure the payment of four notes of that date, amounting in the aggregate to $4,450.
And on the 11th of February, 1856, he executed another *365 mortgage to Gregory and Maury to secure a note for $4,946 50 of that date.
Gregory having died, his executrix brought suit to foreclose the first mentioned, mortgage, seven of the thirty-two notes for $200 each having been previously paid. The executrix, in conjunction with Maury, also brought two other suits to foreclose the-other two mortgages. These three suits, together with several others, were afterwards consolidated and tried together.
The matters of defense relied upon by Jameson, in his several answers, were, in substance, that-the notes and mortgages set up by the plaintiff “were given .in consideration of lottery tickets sold in the State of Ohio by the defendant, as the agent of Gregory and Maury, and for no other consideration whatever The said selling of tickets was done through the defendants’ agents in Cincinnati, who failed to pay him the proceeds of the sales, and the defendant, considering himself bound for the conduct of his said agents, executed said notes and mortgages to secure the amount of their defalcations; and the defendant avers that by the laws of Ohio at the time said tickets were sold, and ever since, a penalty was and is denounced against any person who should or may sell, or in any manner deal in lottery tickets, and no contract or promise based upon any dealing in lottery tickets, could or can be enforced,” and he therefore asks to have the notes and mortgages cancel-led and surrendered.
The court below sustained the defense as to the notes - and mortgages-executed to Gregory and Maury, on the ground that' a sale of the lottery tickets in Ohio by Jameson, as the agent of Gregory and Maury, and with their approval, was a violation of the statutes of Ohio, which prohibit the sale • of such tickets within the State; that as both parties to the transaction were equally guilty of violating this law, neither could be held entitled to relief; and the notes and mortgages were declared cancelled. From this part of the judgment Gregory & Maury have appealed. The notes and mortgage to, Gregory were sustained on the ground that the consideration on which they were given consisted of money loaned by Gregory to Jame- *366 son, and of the purchase money due by the latter to the former for real estate, and judgment for the amount of the notes and for a foreclosure of the mortgage was rendered by the court. From thatjudgment Jameson has appealed. Both appeals will be considered together.
By the statutes of Ohio, a penalty of $500 is imposed upon any person who may set up a lottery within the State, and a penalty of $200 upon any person who shall sell lottery tickets, or shall act as agent for any lottery. (Swan’s Rev. Statutes of Ohio, page 290.)
The.-e statutes, enacted in pursuance of a constitutional provision, which, in substance, declares that “lotteries and the sale of lottery tickets, for any purpose whatever, shall forever be prohibited in this State,” must be regarded as prohibiting, by implication, if not expressly, the sale of lottery tickets in Ohio. And, according to the well settled rule, no contract founded on acts of the parties in violation of such laws would be enforceable; certainly not in the courts of the State whose laws and policy were thus violated- How far comity would require the application of the rule to cases where the contract is made, and is to be performed, and is sought to be enforced in one State, the consideration of such contract arising out of acts of the parties in contravention of the statutes of another State, is a question which it becomes unnecessary to decide.
The first and most important question to be considered is, whether the evidence establishes the material grounds of defense relied on by Jameson. Has he shown satisfactorily that the notes and mortgages, or either of them, were given “in consideration of lottery tickets sold in the State of Ohio, by the defendant, as the agent of Gregory & Maury?” The answer to this question depends, of course, on the evidence, and particularly on the deposition, of Jameson himself, taken in another case, but, by agreement, was read as evidence in this case.
It appears from that deposition, that the firm composed of Gregory and &aury and three other persons, were the managers of the Kentucky and Delaware State lotteries, at Wil *367 mington, Delaware. That, on the first of January, 1852, this firm and Jameson entered into an agreement by which he became their agent iov the sale of tickets in those lotteries. The tickets were sent to him by the firm upon his order. He was, by the terms of the contract, charged with all the tickets he received, having the right to return and receive' credit for such as he did not sell. He had the right.to employ agents of his own, and to remove them at pleasure, these agents being responsible to him, and not to the firm. He was to pay over monthly the proceeds of all sales, to Gregory, who resided in Cincinnati, and who accounted to the firm for the amount. The agents employed by Jameson had their places of business, and made sales of the tickets in, Cincinnati. They became indebted to Jameson in large sums, for the proceeds of their sales, and' executed their notes to Jameson for the amount of such indebtedness. In consequence of their default Jame-son became unable to meet his engagements with Gregory & Maüry; and the notes and mortgages executed in April, 1855, and in February, 185(5, were given to secure the balances due by him to them at those dates, on account of lottery tickets received and sold by him, and not accounted for. He states repeatedly that the consideration of those notes and mortgages was' his indebtedness to the firm for lottery tickets, and that such indebtedness was caused by the indebtedness of his agents to him.
It is.clear, we think, in view of these facts, that Jameson was not the mere factor or agent of Gregory & Maury, in the sale of these tickets. The tickets were delivered to him upon his promise to return, or pay for them at a fixed price. The agreement imposed no terms upon him with reference to the disposition to be made of them when received. He had a perfect right to sell them wherever he chose, and for cash or on credit, at his own unrestricted discretion. He might have sold them either by himself or by his agents. He adopted the latter mode, selecting his own agent's and discharging them at his own option. These agents were responsible to him, and not to the'firm at Wilmington. His liability to the firm was in no' degree dependent upon the conduct of his agents or *368 upon the amount of their liability to him. He proves, on the contrary, that the indebtedness of his agents to him' greatly exceeded his indebtedness to the firm, showing conclusively that his liability was, in no sense, to be measured by the liability of his agents to him. For the balances due him from time to time, he took the notes of his agents, payable to himself, treating them as his own property, and yet holding them as such.
The necessary legal deduction from these facts stated is, that the delivery of the tickets to Jameson, under the agreement proved, passed to him the title and created a binding obligation, on his part, to either pay the stipulated price or to return them. He'failed to do so, and became liable for the price of those not returned — and it was in discharge of that liability that the notes and mortgages were given. As before stated, there was no stipulation in the agreement that Jame-son should sell the tickets in Ohio, or in any other place where their sale was prohibited by law. The agreement, then, having been made in Delaware, and not prohibited by the laws of that State, and containing no stipulation to do any act in violation of the laws of any other State, was certainly valid, and is enforceable here.
Suppose Gregory & Maury had been indicted in Ohio for a breach of the penal statute referred to, could they have been convicted on proof of the facts disclosed by this record? We think not, because the facts do not show that they sold lottery tickets in Ohio. 'The only sales made by them were to Jame-son. Although Jameson, in his pleadings, and throughout his deposition, speaks of himself as the agent of Gregory & Maury, yet the court must look to the agreement itself and to the course of dealing by the parties under it, to ascertain what was really intended, and what was the actual relation they sustained towards each other.
This construction of the agreement between these parties, and the effect we have ascribed to it, is sustained by ample authority.
There is a class of contracts generally called “contracts of sale or return.” In these, the property in the goods passes to *369 the purchaser, subject to an option in him to return them within a fixed time or in a reasonable time, and if he fails- to exercise this option, by so returning them, the sale becomes absolute, and the price may be recovered in an action for goods sold and delivered.
Thus, in Moss vs. Sweet, (3 Eng. Law and Eq. Rep., 311,) goods had been delivered to the defendant for the purpose of selling again, upon his agreement to account for such as were sold at the invoice price, with an option to return the residue within a reasonable time. The defendant had sold a portion of the goods, and had failed to return the rest. It was contended, on the authority of several eases, that the action for goods sold and delivered would not lie, as there was no absolute sale. But it was held that the failure of the defendant to return the goods rendered him liable as upon an absolute sale, and that t.he action for goods sold and delivered was maintainable. The previous case of Ibey vs. Frankenstien, in which a different doctrine had been held, was expressly overruled.
In the case of Depew vs. Keysor, (3 Duer, 336,) the plaintiff sued the defendant for the price of certain ranges and other hardware goods, which were delivered to the defendant upon the following agreement: “An agreement between David H. Tichenor and John H. Keysor, to-wit: The sidck furnished as per bill, by D. H. Tichenor, I do agree to' sell and account to him for, and pay him the cost prices, and twenty per cent, in addition for all articles sold at retail, and fifteen per cent, for all articles sold at wholesale.” For.the defendant it wms contended that this was not a sale of the goods, but that, under the agreement, Keysor was the mere agent or factor of Tichenor, and was not liable as purchaser. The court decided, however, that he was so liable, and, in construing the agreement, said it was not the intention of the parties that the defendant should be liable to account as a factor only, for the net proceeds of future sales, retaining, as compensation for his services, all that might be realized beyond a definite sum; nor did they intend that persons, to whom sales should be made by the defendant, should be primarily liable, or liable at all to Tichenor, *370 the defendant being liable only as guarantor; but that, in the event of sales made by the defendant, he should be immediately and solely liable for the stipulated price, such being the true construction of the agreement — it was a contract of sale and not of agency or guaranty. To the same effect is Marsh vs. Wickham, (14 Johnson, 167.)
But it is contended that, as Gregory & Maury knew that Jameson was selling the tickets in Ohio, and that they were sent to him with an understanding that they would be sold there, such knowledge and understanding was sufficient to vitiate any contract arising upon or connected with the sale of the tickets.
This position is not sustained by the authorities. The doctrine seems to be now well settled, that a mere sale in one State or country, made with knowledge that the vendee intended to use the property to violate some positive law of another State or country, may be the foundation of an action, even in the State or country whose law was intended to be violated. Thus, when a note, made by a citizen of New Jersey, payable at a bank in that State, was discounted for by such bank, the amount being paid in notes of the bank of a less denomination than five dollars, and sent by him to the indorser of the note, residing in New York, where the circulation of such notes was prohibited by law, to be used, and actually used there in the purchase of wheat, the officers of the bank, at the time of making the discount, being informed of the use intended to be made of the notes, although there was no agreement that they should be so used; nor did it appear that the maker of the note or the officers of the bank were informed that the circulation of such notes was prohibited by the laws of New York; it was held, in an action brought in New York, by the foreign bank against the indorser, that these facts constituted no defense. It was also hffid, that, as the contract was made in New Jersey,' and was to be performed in that State, and there being no evidence that either of the parties actually knew of the legal regulations respecting small bills, in force in New York, they were not chargeable with such knowledge.
So, in McIntyre vs. Parks, (3 Met. Mass., 207,) it was decided, by the supreme court of Massachusetts, that a sale of lottery *371 tickets made in another State, where such sale was lawful, to a citizen of Massachusetts, was a valid transaction, though the seller knew that the purchaser bought them for the purpose of sale in Massachusetts, where such sale was prohibited by statute. And it was also held, that, as the tickets were ordered by a letter written and sent from Boston to the vendors at New York, the contract must be regarded as having been made in the latter State, and its legality tested by the laws in force there. We refer also to the cases of Holman vs. Johnson, (Cowper, 391,) and Pellicot vs. Angel, (2 Crom., Mee. & Ros., 311,) Stortwell vs. Hughes, (1 Curtis, 244,) as settling the same general principles.
As to the consideration of the notes and mortgage executed', by Jameson to Gregory but little need be said. It appears that-Jameson had, from time to time, borrowed large sums of money from banks and from individuals, for which he had given acceptances and notes which he was unable to meet, and, to avoid protest, he borrowed money from Gregory to pay off those debts. He was besides indebted to Gregory for real estate; how much that particular debt was does not.certainly, appear, nor is it material. It is certain that this indebtedness formed the consideration of the notes in contest, and the court below properly decided that, as to these, his defense was not sustained. His own account of the origin of his indebtedness to Gregory is confused and contradictory.
The judgment in favor of Gregory’s executrix is, therefore, affirmed. The judgment, so far as it denied relief on the notes and mortgages to Gregory, is reversed, and the cause remanded with directions to render a judgment on these notes in favor of the plaintiff, and for a foreclosure of the mortgages, and for such further proceedings not inconsistent with the principles of; this opinion as may be equitable and proper.