Kitchen v. Greenabaum. et al.

JAMES C. KITCHEN, Plaintiff in Error, vs. JACOB GREENABAUM AND MOSES GREENABAUM, Defendants in Error.

1. *Contract—Sale of lottery ticket against public policy when, equity will not interfere, even though sale be obtained by fraud.*—The sale of a lottery ticket is in violation of the Constitution, (Art. IV, § 28,) and of the statute (Wagn. Stat., 503, § 28), and under the latter it is immaterial that the ticket had drawn the prize before the sale. And the contract being not merely *malum prohibitum*, but against public policy, the fact that the ticket was obtained by fraud, and that the bargain was unconscionable, will not justify interference and relief by a court of equity.

*Error to Saline County Circuit Court.*

*Shackleford & Boyd*, for Plaintiff in Error.

I. The term, "lottery ticket," as used in the statute, means a ticket, the value of which is uncertain, and to be determined by a drawing to take place in the future. The term, as used in the petition, has reference to a ticket which entitled the holder to a definitely ascertained amount—known to the defendants at the time of the contract. The defendants having received the money which had been drawn by the ticket, will not be aided by the illegality of any other contract than that under which he became possessed of the ticket. (Wimer vs. Pritchardt, 16 Mo., 252.)

*Phillips & Vest*, for Defendants in Error.

Plaintiff's action was based on an illegal transaction prohibited by the Constitution and the statute, (Const. Art. IV, § 28; Wagn. Stat., 503, § 28) and cannot be enforced. (Comyn. Contr., pp. 59–67; U. S. Bk. vs. Owens, 2 Pet., 538; Coppell vs. Hall, 7 Wall., 558; Bank vs. Lanier, 11 How., 369; Downing vs. Ringer, 7 Mo., 585; Mitchell vs. Smith, 1 Binn., 110; Siedersbender vs. Charles, 4 Serg. & R., 160; Biddis vs. James. 6 Binn, 329; see also, Hayden vs. Little, 35 Mo., 421; Maybin vs. Coulon, 4 Dal., 298; Duncanson vs. McLarc, 4 Dal., 308; Badgley vs. Beale, 3 Watts, 263; Kepner vs. Keefer, 6 Watts, 231; Wagonseller vs. Snyder, 7 Watts, 343; Clippinger vs. Hepbaugh, 5 W. & S., 315; Wilson vs. Hines, 5 Barr., 452; Columbia Bank and Bridge Co. vs. Hal-

deman, 7 Watts & S., 233 ; App vs. Coryell, 3 Penn., 494 ; Edgell vs. McGlaughlin, 6 Whart., 176 ; Bruce's Appeal, 5 Smith, 295 ; Fowler vs. Scully—reported in Law Times for January, 1873 ; Wilhite vs. Roberts, 4 Dana, 175 ; Sumner vs. Sumner, 54 Mo., 340.)

The test whether a demand connected with an illegal transaction is capable of being enforced at law, is whether the plaintiff requires the aid of the illegal transaction to establish his case. If the plaintiff cannot open his case, without showing he has broken the law, the court will not assist him, whatever his claim in justice may be upon the defendant. (Duncan vs. Scott, 11 Serg. & R., 164 ; Thomas vs. Brady, 10 Barr, 170 ; Scott vs. Duffy, 2 Harris, 20 ; Evans vs. Deavo, 12 Harris, 65 ; see especially, Holt vs. Green, 73 Penn. St., 198 ; 2 Kent Com., 598, [8 Ed.] ; Bartlett vs. Viner, Carth., 252 ; see also, Badgley vs. Beale, 3 Watts, 263 ; Woodworth vs. Bennett, 43 N. Y., 273 ; Hodges vs. Torrey, 28 Mo., 99 ; Langsdon vs. Green, 49 Mo., 363.)

Applying the above rule to the case at bar, the plaintiff cannot recover. The very first step in opening his case must be to show that he sold a lottery ticket to one of the defendants, in violation of the laws of the State.

II. Plaintiff in error claims that the prize had been drawn when he sold the ticket, and that he sues, not for the price of the ticket but for its proceeds. The ticket was still a lottery ticket, whether the prize had been drawn at the time plaintiff sold the ticket to defendant or not. The statute is exceedingly broad, and says nothing about any exception as to time or persons, but strikes at any one who shall be "in anywise concerned in the sale or exposure to sale of any lottery ticket or tickets, or any share or part of any lottery ticket, in any lottery or device in the nature of a lottery, within this State or elsewhere," etc. According to his own statement he was ignorant at the time he sold the ticket, whether it had drawn any prize or not.

Sherwood, Judge, delivered the opinion of the court.

This was an action to recover six hundred dollars, alleged to have been fraudulently obtained by defendants from plaintiff.

Plaintiff states in his petition, that about the 5th day of December, 1872, he owned a ticket in an enterprise known as the "Second Grand Gift Concert, for the benefit of the Public Library of Kentucky," which ticket was numbered 42,464, and which entitled the holder thereof to whatever prize or gift the same might draw upon a distribution, by lot, among the ticket holders in said enterprise, which said drawing was to take place, and did take place, on the 7th day of December, 1872, at the City of Louisville, State of Kentucky, and that at said distribution, or drawing, the said ticket, numbered 42,464, and of which plaintiff was at that time the owner and holder, drew a gift or prize of the value of six hundred dollars, to which the plaintiff was entitled as the owner of said ticket; that, at the time of said drawing, he was at his home in Saline county, Missouri, and that afterwards, on December 12th, 1872, not being informed of the result of said drawing, he was induced by the false and fraudulent representations of defendants, who had confederated for the purpose, to sell said ticket to the defendant, Jacob Greenabaum, who afterwards, in the month of December, 1872, obtained "said prize," to-wit: the said six hundred dollars.

Plaintiff also states that on the said 12th day of December, having no knowledge whatever of the result of said drawing, he inquired of the defendant, Moses Greenabaum, in his storehouse, in Saline county, Missouri, concerning the same, who informed plaintiff that he had a paper containing a list of the numbers of the tickets which had drawn prizes in said distribution or drawing, and did produce a newspaper called the Missouri Republican, containing a list of the numbers of the tickets which had drawn prizes amounting to seventy-five dollars and upwards; that after said paper was produced, and said Moses Greenabaum proposed to examine the list and ascertain whether plaintiff's ticket had drawn a prize, the

plaintiff gave him the number of his ticket, and said Greena-
baum then carefully examined the paper and falsely repre-
sented to plaintiff that his ticket was not upon the published
list, and that if it had drawn a prize, it was a very small one,
and not one of those published; that said Moses Greenabaum
left his store-room and confederated with the defendant, Jacob
Greenabaum, for the purpose of cheating plaintiff, and that
in pursuance of said fraudulent purpose, the defendant, Jacob
Greenabaum, knowing that plaintiff had been deceived by the
false statements of said Moses Greenabaum, came into said
store-room and represented to plaintiff that there was a chance
of his ticket, numbered as aforesaid, being one that had drawn
a prize of ten dollars, and offered to pay plaintiff five dollars
for said ticket, the said Jacob Greenabaum well knowing at
the time that said ticket had drawn a prize of six hundred
dollars; that plaintiff, being mislead by the said false and
fraudulent representations of said Jacob and Moses Greena-
baum, and believing the statements made by them to him
that his ticket had not drawn a prize exceeding ten dollars,
accepted the offer of said Jacob Greenabaum, and delivered
up said ticket to him; and that said Jacob Greenabaum after-
wards presented said ticket to the managers of the said Gift
Enterprise, and received thereon the sum of six hundred
dollars.

Plaintiff asks that the sale of said ticket by him to said
Jacob Greenabaum be declared fraudulent and void and that
he have judgment for the sum of six hundred dollars, and all
proper relief.

To this petition the defendants filed their demurrer at the
return term of the writ, assigning as ground of demurrer that
the petition does not state facts sufficient to constitute a cause
of action; because the petition shows that the plaintiff's ac-
tion is based upon an illegal transaction, viz: the sale by
him of a lottery ticket which sale is prohibited by the con-
stitution and laws of the State of Missouri, and the plaintiff
cannot establish his case without the aid of such illegal transac-
tion, or without showing that he has broken the law.

8—VOL. LXI.

The court sustained the demurrer. No amended petition being filed, judgment was then rendered for the defendants, to reverse which plaintiff brings the case here by writ of error.

The Constitution of this State prohibits the legislature from authorizing any lottery, and forbids the allowance of the sale of lottery tickets (sec. 28, Art. 4, Const. of Mo.) Sec. 28, Art. 8, Wagn. Stat., p. 563, vol. 1, is as follows: "Any person who shall sell or expose to sale, or cause to be sold or exposed to sale, or shall keep on hand for the purposes of sale, or shall advertise or cause to be advertised for sale, or shall aid or assist, or be in anywise concerned in the sale or exposure to sale, of any lottery ticket or tickets, or any share or part of any lottery ticket in any lottery, or device in the nature of a lottery, within this State or elsewhere, and any person who shall advertise or cause to be advertised, the drawing of any scheme in any lottery, and shall be convicted thereof in any court of competent jurisdiction, shall for each and every such offense forfeit and pay the sum not exceeding one thousand dollars."

The petition in this case clearly discloses that the ticket in question falls within the purview of the above statutory provision, and the sale, therefore, was in violation of law. No importance is to be attached to the fact that the ticket, prior to its sale, had drawn a prize, the statute under consideration being sufficiently comprehensive to embrace sales made subsequently, as well as anterior to the drawing. Otherwise, the beneficent purposes of the statute might be very readily evaded, by simply making sale of the tickets after the drawing, but before the discovery of the winning numbers. It will be observed, that the statute referred to, levels its denunciations and penalties, not only against those who sell lottery tickets, but against "any person who shall * * * be in anywise concerned in the sale or exposure to sale." It follows from this that the defendants as well as the plaintiff, are guilty of violating the law. And the rule which generally prevails when either party to the illegal contract or transaction applies

to the courts for aid, has been correctly stated by the counsel for defendants. The maxim, however: "*In pari delicto, potior est conditio defendentis et possidentis,*" is not of universal prevalence. Among the exceptions is that of a mere stake-holder, who having received money under an illegal contract, will not be allowed by asserting such illegality to retain the money thus obtained. And the case of Wimer vs. Pritchartt, cited for plaintiff, (16 Mo., 252), is one of that sort. Another exception arises where the parties to the transaction, although concurring in the illegal act, are regarded as not equally guilty, in consequence of fraud, oppression, imposition or hardship, practiced by one party upon the other, thereby obtaining an unconscionable advantage. Under such circumstances, courts of equity have not hesitated to interfere in behalf of the less guilty party, and against the chief mover in the unlawful enterprise. (1 Sto. Eq. Jur., § 300, and cases cited.) These remarks are applicable to cases even where the contract is already an executed one, but must not be understood as applying to those involving moral turpitude, (for there no inquiry will be made into the relative guilt of the contending parties), but to those where the offense is merely *malum prohibitum* and is not in its nature essentially or necessarily immoral, nor violative of any general principle of public policy.

Courts have never yet ventured to define in specific terms the meaning of the phrase, " public policy ; " but the general rule has been laid down "that, whenever any contract conflicts with the morals of the time, and contravenes any established interest of society, it is void as being against public policy." (1 Story on Const., § 675.) Sometimes it is of difficult determination whether a contract or transaction is contrary to public policy. No such difficulty or doubt can arise in reference to the present case, for the reason that both our organic and statute law have placed the seal of their emphatic condemnation upon the sale of lottery tickets, and upon " every device in the nature of a lottery ; " thus settling beyond all opportunity and occasion of cavil the policy of this State.

Instances have also occurred where both parties were in *pari delicto*, in which redress has been afforded. This, however, has been done only when the controlling exigencies of public policy have demanded that aid should be thus granted —(1 Sto. Eq., § 298, and cases cited; Bellamy vs. Bunow Ca., T. Talbot, 97; Harrington vs. DuChalet, 1 Bro. C. C., 124; Woodhouse vs. Meredith, 1 J. & W., 224; Hartwell vs. Hartwell, 14 Ves., 811; Vauxhall Bridge Co. vs. Earl Spencer, 2 Modd., 356 [Am. Ed. 527]; St. John vs. St. John, 11 Ves., 535.)

But no instance can be found where public policy has been contravened in order to grant relief in a particular case; though frequently relief, as before stated, has been afforded out of regard to what the legislative will has declared promotive of the public welfare. (Com. on Contr., 424.)

Taking this view of the subject, we should be wholly unmindful of the settled public policy of our State, did we hold the plaintiff entitled to recover upon the ground that he was not of equal guilt with the defendants. It must be admitted that the decisions of courts, both in England and this country, have greatly lacked uniformity in regard to the topic before us. Many refinements and fine spun distinctions have been made in the endeavor to adapt the rules of law to the hardships of particular cases. Lord Thurlow at one time seems to have thought that in all cases where money was paid for an illegal purpose, it might be recovered by a *particeps criminis* (Neville vs. Wilkinson, 1 Bro. Chy., 543.) This doctrine, it will be at once seen, is tantamount to a total subversion of the maxim to which reference has been made, and has not met with approval in modern adjudications. (1 Sto. Eq. Jur., § 298, and cases cited; Taylor vs. Chester, L. R. 42, B. 309; Meyers vs. Meinrath, 101 Mass., 367; Horton vs. Buffington, 105 Mass., 400; Buck vs. Albee, 26 Verm., 84.)

We have all felt strongly desirous of defeating the fraudulent machinations of these defendants, which stand confessed by their demurrer, and of compelling them to disgorge their ill-gotten gains; but have been unable to do this without ut-

terly disregarding well established principles of the common law, and ignoring the plain behests of our own statutory enactment by lending our sanction to a recovery which would have for its basis an executed contract, bearing on its front the stigma and taint of illegality.

But aside from considerations of this nature, were the plaintiff allowed to recover in the case at bar, we are met with the ever recurring question : How far are we to go, and where under like circumstances, is the limit to be assigned to judicial interposition ? There is manifestly none ; and if the plaintiff is permitted to succeed in this action, there is no refuge from this result ; that upon a similar complaint to his, being filed, courts might, in effect, be called on to sit as the arbiters of the gaming table or the umpires of the prize-ring. The safer, and, the only consistent course therefore, is to be found by treading in the ancient ways of the law, and apart from well ascertained exceptions, giving faithful adhesion to the maxim on which defendants have relied. The judgment is affirmed. All the judges concur.