F. B. HATCH, Respondent, v. ANNA HANSON, Appellant.

### Kansas City Court of Appeals, June 25, 1891.

1. **Appellate Practice**: BRIEF: POINTS AND AUTHORITIES. Rule 15, which is founded on the statutes, requires appellant to file a brief containing in numerical order the points or legal propositions relied on, with citations of such authorities as counsel desire to present in support thereof; and when authorities are cited without any designation of the point or legal proposition that they are intended to support, the brief is subject to objection.

2. **Action**: MONEY HAD AND RECEIVED: INTEREST IN LOTTERY TICKET: CONTRACT: LEGAL, WHERE MADE: EXECUTORY CONTRACT. K., with his own and the money of plaintiff and another, sent to New Orleans and bought tickets in the Louisiana Lottery Company. On the receipt of the tickets at the post office, he, without the knowledge of the other two, turned over four of the tickets to defendant. At the drawing one of the tickets so turned over drew a prize, which defendant collected, and refused to pay plaintiff his share. *Held*,—

   (1) Plaintiff can maintain his action to recover his share.

   (2) The purchase of the tickets was a Louisiana contract and valid, and was not affected by the anti-lottery laws of this state.

   (3) When the money came to defendant's hands the contract was executed, and she cannot use the taint of illegality as a shield to protect herself against the claim of plaintiff.

   (4) The preceding points are reaffirmed on motion for rehearing.

46 323
50 506
46 323
61 554
46 323
67 170
46 323
141m 44
74 103
46 323
80 427
46 323
97 42

3. **Evidence**: FOREIGN STATUTE: PLEADING.  When the action is not based on a foreign statute, it is unnecessary to plead it in order to introduce it in evidence.

*Appeal from the Jasper Circuit Court.*—HON. M. G. McGREGOR, Judge.

AFFIRMED.

*C. B. McAfee*, for appellant.

Cited : *Funk v. Galliger*, 49 Conn. 124 ; 44 Am. Rep. 210; *Kitchen v. Greenbaum*, 61 Mo. 110 ; Const. Mo., sec. 10, art. 14 ; R. S. 1889, sec. 3833, art. 8 ; sec. 3936, art. 8; *Shaffner v. Pinchbeck*, 24 N. W. Rep. 867 ; *Boyd v. Mill Creek*, 24 N. E. Rep. ( Ind.) 661 ; *Jackson v. McLain*, 13 S. W. Rep. ( Mo.) 393; *Nichols v. Trible*, 13 S. W. Rep. (Ark.) 796 ; *Sullivan v. Hergan*, 20 Atl. Rep. ( R. I.) 232; *Goodrich v. Houghton*, 9 N. Y. Sup. 214.

*Harding & Buller*, for respondent.

(1)  Our statutes, sections 3832 and 3833, page 915, simply prohibit, *first*, the establishing of any lottery, and, *second*, the advertising and sale of lottery tickets in this state.  ( 2 )  In this case there was no sale or purchase in this state.  *State v. Shaffer*, 89 Mo. 280 ; *Kling v. Fries*, 33 Mich. 275; *Case v. Riker*, 10 Vt. 482; 33 Am. Dec. 211 ; *Washburn v. Fletcher*, 42 Wis. 152.  ( 3 )  The purchase was made in Louisiana, where it was lawful.  Sess. Acts, La. 1868, 24, 25, 26.  And courts will recognize the validity of contracts made, and to be performed in' another state, precisely as they would be recognized in that state, and, especially, when executed, will protect the results.  *Cohn v. Rinker*, 34 Fed. Rep. 472; *Kentucky v. Bassford*, 6 Hill ( N. Y.) 526; *Stix v. Matthews*, 63 Mo. 37; *Roach v. Type Foundry*, 21 Mo. App. 118; *Mathews v.*

*Paine,* 77 Ark. 55 ; *McGrow v. Hamlin,* 29 Mich. 476 ; *Antoine v. Smith,* 40 La. Ann. 560 ; *McIntyre v. Parks,* 3 Met. (Mass.) 207; *Jameson v. Gregory,* 4 Met. (Ky.) 370. (4) But, even if the original transaction was tinctured with illegality, so that it would not have been directly enforced by courts of this state, still, it having been executed, and the money paid, the respondent, into whose hands it happened to come, cannot avail herself of the illegality of the original transaction so as to shield herself from paying it over to the party for whose use she collected it. *McBlair v. Gibbs,* 17 How. (·U. S.) 232 ; *Armstrong v. Toler,* 11 Wheaton, 258 ; *Brooks v. Martin,* 2 Wall. 70 ; *Warren v. Hewitt,* 45 Ga. 501 ; *Kitchen v. Greenbaum,* 61 Mo. 115 ; *DeLeon v. Trevine,* 49 Tex. 88 ; *Bank v. Bank,* 16 Wall. 483 ; *State v. Shadd,* 80 Mo. 358 ; *Land v. Coffman,* 50 Mo. 243.

*C. B. McAfee,* for rehearing.

The contract entered into between plaintiff, Bathurst and Kuhn, in Carthage, Missouri, upon which this suit is based, whereby they entered into an agreement to deal in lottery tickets in the state of Louisiana, in partnership or jointly, cannot be enforced, or a suit based thereon, in a state where lotteries and dealing in lottery tickets are prohibited, and ought not to be enforced here, even if the contract of partnership had been made in Louisiana, where it may be valid and enforceable. *Watson v. Murry,* 23 N. J. Eq. R. 257 (a case on all fours with this); *Watson v. Fletcher,* 7 Grattan, 1 ; *Abbe v. Marr,* 14 Cal. 210 ; *Hayden v. Little,* 35 Mo. 418, *supra; Buckingham v. Fitch,* 18 Mo. App. 91, *supra ; Bank v. Bank,* 38 Fed. Rep. 804; *Kent v. Meltenberger,* 13 Mo. App. 503 ; *Parsons v. Randolph,* 21 Mo. App. 353 ; *Hamilton v. Sculls, Adm'r,* 25 Mo. 165 ; *McCoy v. Greene,* 83 Mo. 626 ; *Waterman*

*v. Buckland*, 1 Mo. App. 45; *Duncan v. Scott*, 11 Serg.
& R. 164; *Thomas v. Brady*, 10 Burr. 170; *Scott v.
Duffy*, 2 Hains, 20; *Hott v. Gun*, 73 Pa. 198; *Holman
v. Johnson*, Cowp. 343. And see Bishop. on Contracts,
sec. 505, *et seq.*, and sec. 549; 1 Bishop Criminal Law
[6 Ed.] sec. 500.

SMITH, P. J.—Plaintiff's petition states that on the
thirtieth day of January, A. D. 1889, plaintiff and one
Kuhn and one T. H. Bathurst entered into an agree-
ment to buy five one-twentieth tickets in the Louisiana
lottery for the February drawing thereof, jointly and in
partnership; that the plaintiff furnished to said Kuhn
plaintiff's proportion of money as agreed upon to pay
for his third interest in said five tickets; that said Kuhn
thereupon sent an order for said five one-twentieth
tickets to said lottery company, and received said
tickets from said company by the course of mail; that
plaintiff owned and was entitled to one-third interest in
said five tickets, which tickets were numbered 64109,
611116, 54137, 59123 and 56630, and the said Kuhn
held the said tickets for the joint use and benefit of
plaintiffs, said Bathurst and Kuhn, each being interested
one-third in same; that said February drawing of said
lottery was duly held on the ——— day of February,
1889, and one of said tickets, to-wit, number 64109,
drew a prize of $5,000, which was duly collected, or
caused to be collected, from said lottery company by
said Kuhn, whereby plaintiff was entitled to receive
from Kuhn one-third of said amount of $5,000, to-wit,
$1,633.33; but plaintiff alleges that said Kuhn, instead
of paying over said sum to plaintiff as he was in duty
bound to do, pretended that the defendant, Anna
Hanson, had some interest in said ticket, and caused
the money to be paid over to her, instead of to the
plaintiff; that said Anna Hanson, combining and con-
federating with said Kuhn to defraud plaintiff of his
money so collected and held by said Kuhn, who refuses to
pay over or account to plaintiff for his money so had and

received by said Kuhn and said Anna Hanson, wherefore plaintiff prays that defendants may be required to account to plaintiff, and to pay over said money so had and received belonging to plaintiff, and that judgment be rendered against defendants for said amount. Defendant's answer, in effect, alleged, *first*, that the said lottery ticket, number 64109, which drew the prize was jointly purchased and owned by defendant and Kuhn, and, *second*, that said Louisiana lottery, described in plaintiff's petition, was at the date alleged by plaintiff, and for a long time before, and still is, a gambling and gaming scheme prohibited by law, and that any and all dealings, buying, selling or contracting, concerning the same, are prohibited by law, and are null and void, and that said alleged agreement and contract set out by plaintiff in his petition is void, is a gaming contract, is against public policy, and plaintiff ought not, therefore, to recover.

The evidence tended to show that in January, 1889, three young men, Burt Kuhn, Frank Hatch (plaintiff), and Tom Bathurst, being co-clerks in a store at Carthage, Missouri, agreed "to chip in" together and send $5 to the Louisiana state lottery at New Orleans, for five one-twentieth tickets in the February drawing of that lottery, which was accordingly done, and one of them, Burt Kuhn, wrote the letter ordering the tickets and inclosing the $5 contributed by the three, the tickets being $1 each, which order and money was received by the lottery company in New Orleans, the order accepted, and the tickets mailed by the lottery company to Kuhn at Carthage, Missouri. In the meantime, some days after this order was sent for these five tickets for Kuhn, Hatch and Bathurst, Kuhn and Anna Hanson agreed to jointly order four tickets, also for the February drawing of said lottery, for themselves, which they accordingly did; but it seems this last order was sent too late for the February drawing, and hence the four tickets were sent for the March

Hatch v. Hanson.

drawing ; but it so happened that when the five tickets, ordered by the three young men, came directed to Kuhn, he met Miss Hanson at the postoffice just as he opened the envelope inclosing the five tickets, and there gave her four of the tickets, thinking he would replace them with those intended by him for her and himself, when they arrived. The order sent by Kuhn for Miss Hanson and himself was not received in New Orleans in time for the February drawing of the lottery company, so their tickets were not received until the next month. Hatch and Bathurst were not aware that Kuhn had given the four tickets, in which they were jointly interested with him, into the possession of Miss Hanson until after the drawing. When the March drawing took place in New Orleans one of the tickets, purchased for the three young men, drew a prize of $5,000 which Miss Hanson proceeded to collect through a bank at Springfield, Missouri, and to divide with Kuhn. Kuhn, after this suit was begun, paid Bathurst one-third of the prize money, but Miss Hanson would not pay Hatch any part of the money she had received. The case was tried before the court, without a jury. No instructions were asked or given.

The court found for plaintiff and rendered judgment against Miss Hanson for one-third of the prize money received by her, and from which judgment she has appealed.

I.   Rule 15, governing practice in this court, requires the appellant or plaintiff in error to file with the clerk an abstract or abridgment of the record in the cause, a brief containing in numerical order the *points or legal propositions relied* on, with citations of such authorities as counsel desire to present in support thereof. This rule is founded upon the statute. R. S., sec. 2301. It has not been observed by the defendant, who is appellant in this case. There are a number of authorities cited, but what point or legal proposition they are intended specially to support we are left to

ascertain as best we may. Nor does the printed argument in any way supply the omission. But, as the case has been submitted without any objection on that account having been interposed by the plaintiff, we shall proceed to review what we are led to suppose are the grounds for the defendant's appeal.

The defendant, as we understand it, assails the plaintiff's petition on the ground that it does not state facts sufficient to constitute a cause of action, in that the contract made is void and against public policy; that it was a gambling contract or scheme that the courts will not aid in enforcing. This is the underlying and decisive question presented for our determination. The constitution of this state prohibits the legislature from authorizing any lottery, and forbids the allowance of the sale of lottery tickets. Const. Mo., sec. 28, art. 14. Section 3833, Revised Statutes, 1889, demands a penalty against, not only those who shall sell lottery tickets, but against any person who shall "be in anywise concerned in the sale or exposure to sale of any lottery ticket or tickets, or any share or part of any lottery ticket in any lottery or device in the nature of a lottery within this state or elsewhere." Neither the plaintiff nor defendant is alleged in the petition to have been in anywise concerned in the sale in this state of any lottery ticket or tickets in any lottery located within or without this state as was the case in *Kitchen v. Greenbaum*, 61 Mo. 110. There a sale of a ticket in a lottery situate in another state was made in this state. The parties were held to be guilty of violating the law. The rule has been declared to be that, when either party to the illegal contract or transaction applies to a court for aid, if the plaintiff cannot open his case without showing he has broken the law, the court will not assist him, whatever his claim in justice may be upon the defendant. *Duncan v. Scott*, 11 Serg. & R. 164; *Thomas v. Brady*, 10 Burr, 170; *Scott v. Duffy*, 2 Harris, 20; *Allgear v. Walsh*, 24 Mo. App. 130; *Holt v. Green*, 73 Pa. St. 198. In

*Holman v. Johnson*, Cowp. 341–343, Lord MANSFIELD remarked: "The objection that a contract is immoral or illegal as between plaintiff and defendant sounds at all times very ill in the mouth of defendant. It is not for his sake, however, that the objection is ever allowed, but it is founded in general principles of policy which the defendant has had the advantage of, contrary to the real justice as between him and the plaintiff by accident, if I may say so. The principle of public policy is this, *ex dolo malo non oritur actio*. No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act. If from the plaintiff's own statement, or otherwise, the cause of action appears to arise *ex turpi causa*, or from the transgression of a positive law of his country, then the court says he has no right to be arrested. It is upon that ground the court goes, not for the sake of the defendant, but because it will not lend its aid to such plaintiff. So if plaintiff and defendant were to change sides, and the defendant was to bring his action against plaintiff, the latter would have the advantage of it; for when both are equally in fault, *potior est conditio defendentis*." *Holman v. Johnson*, Cowper, 341; *Sullivan v. Hugar*, 20 Atl. Rep. 232. If the transactions, stated in the plaintiff's petition, do not show that he has broken the law, then his recovery in this case is not within its inflexible interdict.

By an act of the legislature of the state of Louisiana the "Louisiana State Lottery Company" was duly incorporated, with its domicile fixed at the city of New Orleans in that state. It was provided in that act that one of its objects was to establish a solvent and reliable home institution for the sale of lottery and combination tickets, devices and certificates, fractional parts thereof, at terms and prices in just proportion to the prizes to be drawn, and to insure perfect fairness and justice in the distribution of such prizes, etc. Acts of Louisiana, 1868, 24. The sale of tickets in this lottery within the state of Louisiana was made lawful there by express

statutory provisions. If the plaintiff was concerned in the purchase and sale of one or more lottery tickets in said lottery at New Orleans, in the state of Louisiana, his act in that respect was not only lawful there, but could be no violation of the laws of this state, prohibiting the sale of lottery tickets within its jurisdiction. But was the transaction of the purchase and sale of the lottery tickets so made in the state of Louisiana, or in this state?

Mr. Story in his work on conflict of laws, eighth edition, section 258, states that all contracts made in a foreign country against good morals or religion or public rights, even though they be held valid in the country where they are made, would be held void elsewhere, or at least ought to be, if the dictates of christian morality, or even of natural justice, are allowed to have their due force and influence in the administration of international jurisprudence. Mr. Bigelow in *note b*, to the section just cited, remarks: "But, to come within this exception, a contract must be clearly founded in moral turpitude, and not *simply* contrary *to the statutes* of the country where it is sought to be enforced." Thus, in a case in New York where the sale of lottery tickets is prohibited by law, an action was brought on a bond conditioned for faithful performance of certain duties enjoined by a law of Kentucky, which authorized the obligees to sell lottery tickets for the benefit of a college in that state, and the bond was held valid, it being so at the place where the condition was to be performed, and it was immaterial whether the bond was to be executed in New York or Kentucky. *Kentucky v. Basaford*, 6 Hill (N. Y.) 526. The order accompanied by the purchase money for the tickets was sent from the city of Carthage, in this state, to the lottery company at New Orleans, in the state of Louisiana, where the same were received, and from where the tickets were sent by mail to Kuhn, who was acting for the plaintiff, as well as for Bathurst and himself. In *Case v. Ricker*, 10

Vt. 480, Mr. Justice COLLAMER, who delivered the opinion of the court, remarked: "The sale of foreign lottery tickets in this state being forbidden under severe penalties, the question is, whether the pay can be recovered here for tickets sold in another state to be brought into this state for sale. The defendant ordered the tickets sent by mail, and they were so sent from Rhode Island. This was a sale and delivery in Rhode Island. The ticket vested in defendant when mailed, as much as if delivered to him personally there." By the statute of Michigan, all contracts for debts for liquor were declared illegal, and not enforceable in that state. In *Kling v. Feris*, 33 Mich. 275, the plaintiff, who was a wholesale liquor dealer in Cleveland, Ohio, where the sale of liquors was unrestricted by prohibitory laws, sent his agent to the state of Michigan, who there exhibited samples to defendant, and took his order there, subject, however, to its acceptance by the plaintiff in Cleveland. The order thus given was sent by the agent to plaintiff in Cleveland, who accepted the same. The supreme court held, that, upon the state of facts, that as the sale was not completed in Michigan, where it would have been an illegal contract, but in the state of Ohio, by its acceptance there, it was valid and enforceable. In *State v. Shaeffer*, 89 Mo. 271, which was a prosecution by indictment for obtaining money and property by false representations, it was held that the place where the money or property is obtained, without regard to where the representations were made, is the place in which the party should be prosecuted. In *Jamison v. Gregory, Ex'r*, 4 Met. 363, the court of appeals of Kentucky quote with approval what was said in *McIntyre v. Parks*, 3 Metcalf (Mass.) 207, which was to the effect that, where a letter was written and sent from Boston to the vendors at New York, the contract must be regarded as having been made in the latter state, and its legality tested by the laws in force there,

citing *Holman v. Johnson*, Cowper, 391, *supra ; Pelicot v. Angel*, 2 Cromp. Mus. & Ros. 311; *Shotwell v. Hughes*, 1 Curtis, 244. These authorities make it quite plain, that the place of the transaction of the plaintiff and his associates, in respect to the lottery tickets, was made in the state of Louisiana, so that by reason thereof they were guilty of no infraction of the laws of this state. As was said in *McIntyre v. Parks*, 3 Met. ( Mass.) *supra*, the sale of a lottery ticket *made in another state, where such sale is lawful to a citizen of the state, where such sale is prohibited by statute, is a valid transaction.*

After the purchase and receipt of the ticket, and the drawing of the prize by one of these tickets, the plaintiff and his associates in this state, as the owners of the lucky tickets, were, in legal contemplation, in a situation not different from that of being the owners of a certificate of deposit payable to bearer for $5,000 on an incorporated banking institution in the city of New Orleans. In either case the courts of that state would have been open to them, and would have lent them their assistance in the collection of the amount due on the contract. Now whether Kuhn, or the defendant, collected from the lottery company the prize money, would make no difference as to plaintiff; for it is not pretended that defendant had in any way acquired any right, title or interest in so much of said prize money as the plaintiff was entitled by reason of being the joint and equal owner of one-third of the ticket drawing the same. The defendant having received of the lottery company the plaintiff's one-third interest in the prize money, the question now is, can she be permitted to retain the same as against the plaintiff in this action for money had and received by her to his use? She asserts no valid legal title to the money as against plaintiff, but invokes, and relies for her defense, against the plaintiff's claim, upon the principles of the maxim: " *In pari delicto potior est*

*conditio defendentis et possidentis.*" But as it was said in *Kitchen v. Greenbaum, supra,* this maxim is not of universal prevalence. It has manifestly no application to the facts upon which the plaintiff's claim is founded, because it is not connected with an illegal transaction, nor does its establishment show that he has broken the law. If the defendant can withhold this money which she has received for the plaintiff's use, then a bank or express company, whose agency might be employed in collecting it from the lottery company, could on the same grounds retain it as against the plaintiff. The lottery company, too, could decline payment, and the courts would not lend assistance to plaintiff in coercing payment. But, as we have said, the transaction was valid by the statutes and jurisprudence of the state where it was made, and would be upheld by the courts there. *Antoine v. Smith,* 40 La. Ann. 560.

The contract in issue was executed, and the courts with great unanimity have held that, in such cases, they will protect the result. *Cohn v. Rinker,* 34 Fed. Rep. 472; *Kentucky v. Bassford,* 6 Hill (N. Y.) 526; *Stix v. Matthews,* 63 Mo. 37; *Roach v. Type Foundry,* 21 Mo. App. 118; *McGrow v. Hamlin,* 29 Mich. 476; *Antoine v. Smith,* 40 La. Ann. 560; *McIntyre v. Parks,* 3 Metcalf, (Mass.) 207; *Jameson v. Gregory,* 4 Met. (Ky.) 370.

But if the original transaction between the parties thereto is held to be tainted with illegality, so that it would not have been directly enforced by the courts of this state, still since it is shown to have been executed, and the money paid into the defendant's hand, she cannot use such illegality as a shield to protect herself against the claim of the plaintiff, for whose use it was by her collected. *McBlair v. Gibbs,* 17 How. (U. S.) 232; *Armstrong v. Toler,* 11 Wheaton, 258; *Brooks v. Martin,* 2 Wall. 70; *Warren v. Hewitt,* 45 Ga. 501; *DeLeon v. Trevine,* 49 Texas, 88; *Planters' Bank v. Bank,* 16 Wall. 483.

In this case the contract between plaintiff and the lottery company had been fully executed. The money had been collected from the company by defendant, and she now refuses to pay it over to the plaintiff, because, she contends, the executed contract was infected with illegality. This, it seems to us, she will not be permitted to do.

A question very similar to this arose in the case of *McBlair v. Gibbs*, 17 How., *supra*, where it was said, "Even if the money be paid to a third person for the other party, such third person cannot set up the illegality of the contract on which the payment has been made and withhold it for himself." In the case of *Brooks v. Martin*, 2 Wall. already cited, the supreme court of the United States announced itself quite satisfied that the doctrine stated in *McBlair v. Gibbs* was sound. *Planter's Bank v. Union Bank*, 16 Wall. 483, approbates the same doctrine. In *Tenant v. Elliott*, 1 B. & P. 3, a broker effected an insurance which was illegal, being in violation of the navigation laws, and, on a loss happening, the underwriters paid the money to the broker, who refused to pay it to the assured, setting up the illegality of the insurance. The insured recovered on the ground that the implied promise of the broker, arising out of the receipt of the money for the insured, was a new contract, and not affected by the illegality of the original transaction. And the same principle was applied and enforced in *Farmer v. Russell*, 1 B. & P. 296. *Cohn v. Rinker*, 34 Fed. Rep. 472, was a case decided in the circuit court of the United States for the western division of the western district of Missouri, where the plaintiff and defendant made a joint purchase of a ticket in the Louisiana State Lottery Company, which drew a prize of $75,000. The defendant collected of the lottery company, and refused to pay over to the plaintiff his share thereof, upon the ground that both parties were citizens of the state of Missouri at the time of the transaction, and that the constitution and laws

of that state prohibited the dealing in lottery tickets. The plaintiff, in the action for money had and received, was permitted to recover, notwithstanding the defense which we have already stated.

The defendant places her main reliance upon the case of *Goodrich v. Houghton*, 9 N. Y. 214, where two joint owners purchased a ticket in the Louisiana lottery, which drew a prize, and one of them received the money which he refused to divide with the other, although he had promised to do so. In an action on this promise, the court held the plaintiff could not recover because it had reference to the original bargain, which was illegal, and afforded no basis for recovery of the plaintiff's share of the money. This decision would seem to conflict with that in 6 Hill already referred to. It may have been influenced by the statute of New York, which had been enacted since the latter decision, and which provided amongst other things, that the provision of the chapter should be applicable to lotteries drawn or to be drawn out of the state, whether authorized or not by the law of the state where they were drawn or to be drawn, in the same manner as to lotteries drawn or to be drawn within the state. R. S. N. Y. Penal Code, ch. 8, p. 68. But whether this decision was because of the statute of that state or not, we may observe that, if the original purchase of the lottery ticket by the plaintiff was legal, as we think was the case, then the decision is not in point here; if, however, on the other hand, the transaction, including the purchase of the ticket, was invalid, yet, inasmuch as it is an executed transaction and the proceeds thereof have been paid into the hands of the defendant for the use of the plaintiff, then, we think, there is an implied promise on the part of the defendant to pay over such proceeds to the plaintiff, and, in this action for money had and received, that she cannot be heard to plead in excuse for non-payment thereof the original taint of illegality. This view, we think, is sustained by the authorities

Hatch v. Hanson.

referred to in a preceding paragraph, and the principles and warnings of these authorities, whether in conflict with the 9 N. Y., *supra*, or not, have the approbation of our judgment, and will be applied and followed in our ruling in this case. We do not, therefore, think that, with the possible exception of the case in 9 N. Y., that any of the cases upon which the defendant relies lend authoritative support to the theory of her defense.

In most, if not in all, of these, the plaintiff was either compelled to prove an illegal contract in order to establish his claim, or the action arose *ex turpi causa*, or from the transgression of a positive law of the state where the same was brought. We think we have demonstrated that the petition states a good cause of action, and it is not subject to the objections that the defendant has lodged against it.

The defendant objected to the introduction of the statutes of Louisiana in evidence, for the reason that the same had not been pleaded. The record does not disclose that this objection was interposed in the court below, and hence cannot be raised here for the first time. Besides, the plaintiff's action was not based directly on this statute, it being for money had and received by defendant, for the plaintiff's use, hence it was unnecessary to plead it. The evidence was submitted to the court, whose finding seems fully justified by it. The judgment must be affirmed. All concur.

ON MOTION FOR REHEARING.

SMITH, P. J.—An agreement entered into in this state to purchase a lottery ticket in another state does not fall within the prohibition of the statute of this state in reference to lotteries. R. S. 1889, sec. 3833. The purchase in this case was not made in this state, but in the state of Louisiana where it was entirely legal. We prohibit the making of certain contracts in this state; we

do not undertake to give our laws any extra territorial operation. New York, by its statute, prohibits lottery advertisements. A contract made in that state to advertise a lottery in other states, where such advertisements were not 'prohibited, was held not to be illegal, and that the statute against lotteries was in no manner infringed. *Ormes v. Danchey*, 82 N. Y. 443; *People v. Nollke*, 94 N. Y. 137.

The allegation of the facts which led up to the transaction of the purchase of the lottery tickets in this case was, perhaps, necessary to show the title of the plaintiff to an interest in the prize money which the defendant had received in part for his use.

Whether the plaintiff applied by letter or in person to the lottery company or at its office in the state of Louisiana, is immaterial, for the reason, that in either case the minds of the plaintiff and the lottery company, a legal entity, there first met, and it was there the contract was made. It was under this contract that the defendant was paid the prize money which she now seeks to retain, because it was a wagering contract which the courts will not lend their aid in enforcing. The agreement to purchase the tickets infringed no statute of this state, nor did the purchase of the tickets in the state of Louisiana, so it is quite difficult to see why the plaintiff's cause of action cannot be sustained in this state. *Funk v. Galliger*, 49 Conn. 124, is exactly in line with *Kitchen v. Greenbaum*, 61 Mo. 110, and decides no more than is there decided. It was a case where a claim was made for property under a title derived through a lottery transaction which had taken place in violation of the statute of Connecticut. The case is in no respect analogous to this, and we think it is wholly inapplicable to it, and the same remark is equally applicable to the case of *Watson v. Fletcher*, 7 Gratt. 1.

The case of *Watson v. Murray*, 23 N. J. Eq. 257, goes far towards upholding the defendant's contention.

It declares lotteries to be *mala in se*, while the supreme
court of the United States declares them in legal accept-
ance of the term *mala prohibita*. *Stone v. Missis-
sippi*, 101 U. S. 814 ; *Ewell v. Doggs*, 108 U. S. 143. *Malum
prohibitum* is defined in Anderson's Law Dictionary,
650, to be an act made wrong by legislation—a forbidden
evil. The whole opinion proceeds upon an idea that
lotteries are *mala in se*, and, therefore, the courts of
justice are nowhere bound to accord to contracts respect-
ing them any validity, though valid in the jurisdiction
where made. This ruling stands opposed to the well-
established current of judicial decision, as we have seen
from the cases referred to in the opinion in respect to
the interpretation of contracts, that, though prohibited
by the laws where it was sought to enforce them, they
were valid in the states where made. In the state of
Massachusetts slavery was declared to be contrary to
natural right, the principles of justice and sound policy.
In *Com. v. Aves*, 19 Pick. 215, Chief Justice SHAW, in
delivering the opinion of the court, declared that a note
given in the state of Louisiana for the purchase price of
a slave could be enforced in that state because legal
by the laws of the state where made. It was further
remarked in the same connection by this eminent judge,
that, if a state saw fit to establish slavery by law, "we
are bound to take notice of the existence of those laws,
and we are not at liberty to declare and hold an act
done within their limits unlawful and void upon our
views of morality and policy, which the sovereign power
and legislature has pronounced lawful." And to the
same effect is *Greenwood v. Curtis*, 6 Mass. 358.

While the question presented is very close, and one
of great nicety, we think the law is with the plaintiff.
After giving the points and authorities cited in support
thereof in the brief of the counsel for the defendant the
most attentive consideration, we feel constrained to
adhere to the conclusion announced in the opinion.